# SUPREME COURT

### OF THE

## STATE OF COLORADO.

## January Term, A. D. 1916.

[No. 8522.]

### COUNTY COMMISSIONERS OF EAGLE COUNTY ET AL. V.
### THE PEOPLE EX REL.

1. STATUTES—*Construction.* Where the words of a statute, taken in the sense in which they are commonly received convey a plain and reasonable meaning, not opposed to the manifest purpose of the enactment, there is no room for interpretation. (5.)

2. —— *Construed—Election to Move County Seat.* Under sec. 1167 of the Revised Statutes, as amended by c. 105 of the Laws of 1911, a remonstrance to raise the question as to the value of county buildings is sufficient, if subscribed by one-fourth of the remaining tax-payers, after eliminating those whose names appear upon petition for the election. (5.)

*Error to Eagle District Court.* Hon. CHARLES CAVENDER, Judge.

Mr. JOHN A. EWING, Mr. GEORGE C. MANLY, Mr. JAMES DILTS, for plaintiffs in error.

Mr. JOHN Q. DIER, Messrs. HUGHES & DORSEY, Messrs. HOGAN & BONNER, for defendant in error.

BAILEY, J., Delivered the opinion of the court.

The People of the State of Colorado, on the relation of Frank V. Burbank, filed its petition in the District Court of Eagle County, seeking a writ of mandamus to compel the Board of County Commissioners of that county to annul and set aside its order theretofore made, removing the county seat from the town of Red Cliff to the town of Eagle.

The principal contention is that by the terms of the statute, amended section 1167, Session Laws 1911, page 263, a two-third's vote of the legal taxpaying electors of that county was requisite to remove the county seat as ordered. An election upon the question of removing the county seat had been held on the 5th day of November, 1912, at which 844 votes, more than a majority of the total votes cast upon the question, were in favor of the town of Eagle for the county seat.

The amended statutory provision, under which the election was had, reads in full as follows:

"Whenever the legal taxpayers of any county in this State are desirous of changing the county seat of the county in which they reside, from the place where such county seat has been permanently located, they may at any time, present to the county commissioners of such county, a petition signed by a majority of such taxpayers whose names shall appear on the last tax roll, provided that no names shall be withdrawn from said petition after the same has been presented to the Board of County Commissioners except in cases of actual fraud in the procuring of signatures to the same; and thereupon it shall be the duty of such commissioners to require the county clerk, in giving notice for the next general election, to notify the legal voters of said county, who have resided in the county six months and the election precinct ninety days next preceding such election, to designate upon their ballots at such election, the place of their choice, and if upon canvassing the votes polled or given, it shall appear that any one place has two-thirds of all the legal

votes polled or given, such place shall be the county seat, and notice of any change thereby made shall be given as provided by law: Provided, that where the petition states that the value of the county buildings, exclusive of furniture, vaults, cages and other jail equipment does not exceed the sum of fifteen hundred dollars it shall not be necessary for such majority to be more that a mere majority of all the legal votes cast to effect such removal; if issue shall be taken on the allegation of value in the petition contained, the same shall be by written remonstrance, filed within ten days after the filing of said petition, signed by at least one-fourth of such taxpayers, whose names do not appear on said petition; thereupon the County Commissioners shall immediately certify such remonstrance to a judge of the District Court of the judicial district in which such county is situated, who shall hear and determine the question of value, whether in term time or vacation, within ten days after such certification, and the decision of said judge thereon shall be final: Provided, further that the term 'legal taxpayers,' as used in this section shall be held to mean and include only those persons who are qualified voters under the registration and election laws of this State, and who in the calendar year last preceding the year in which such petition is presented as aforesaid, shall have paid a tax, or be liable for the payment of such tax on real or personal property, assessed to them and owned by them, in the county in which such petition is presented."

Under this statute a petition was filed with the board of county commissioners, signed by a majority of the legal taxpayers, who were electors of the county, asking that an election be called for the purpose of changing the county seat of Eagle County from the place where the county seat had been permanently located, which petition stated, among other things, that the value of the county buildings, exclusive of furniture, vaults, cages and other jail equipment,

did not exceed the sum of $1,500.00. To this petition a remonstrance was filed, signed by a majority of the taxpaying electors of the county who had not signed the petition, taking issue upon the allegation of the value of the county property, which issue was certified to the Judge of the Fifth Judicial District, Honorable Charles Cavender, who in due course decided that the value of the property of Eagle County, exclusive of furniture, vaults, cages and other jail equipment, exceeded the sum of $1,500.00. After such determination, notice for an election on the county seat question at the next general election was duly given, and was held on the 5th day of November, 1912, at which the question of the removal of the county seat of Eagle County was submitted to the qualified taxpaying electors, and out of 1,521 votes cast the town of Eagle received 844, being more than a majority, but less than two-thirds, of all the votes cast on the proposition. Upon this result the board of county commissioners made an order changing the county seat from the town of Red Cliff to the town of Eagle, and it is this order which it is sought to annul, and also to compel the several county officers, all of whom were defendants, to retain their respective offices, with equipment, books, fixtures, etc., at the town of Red Cliff, the old county seat.

By plaintiffs in error it is contended that the alleged remonstrance by which it was attempted to raise an issue of value was not such as is contemplated by the statute; that such a remonstrance must have been signed by one-fourth of all the legal voting taxpayers, and therefore that the town of Eagle, to become the county seat, need receive no more than a majority of votes cast upon the question, and that it had been selected as, and in fact had become, the county seat.

The whole case turns on the proper construction and interpretation to be placed upon the section of the statute above quoted. In other words, must a remonstrance in-

tended to raise an issue of value be signed by one-fourth of all the legal voting taxpayers of the county, or need it be signed only by one-fourth of such taxpayers who did not sign the petition for an election for the removal of the county seat?

The particular language for consideration is found in the section above quoted, concerning the written remonstrance, and is as follows: "If issue shall be taken on the allegation of value in the petition contained, the same shall be by written remonstrance, * * * signed by at least one-fourth of such taxpayers, whose names do not appear on said petition." The plaintiffs in error contend that this phrase means a written remonstrance signed by at least one-fourth of all the taxpaying electors of the county, not including in such one-fourth any who had signed the petition for removal; while the defendant in error contends that this means a remonstrance signed by at least one-fourth of the remaining taxpaying electors after excluding those who had signed such petition.

Where the words of a statute and the form and connection in which used, taken in their usual and ordinary meaning, convey within themselves a plain and reasonable sense not opposed to the end thereby sought, there is no room for interpretation or construction. Precisely such a situation is here presented. Taking the phrase in question literally, and in its plain and ordinary sense, it means and can mean but one thing, and that is that the remonstrance is valid when it is signed, as in this case, by at least one-fourth of the remaining taxpaying electors, after eliminating all of those who signed the petition for a county seat election. Upon this proposition there seems to be no room for a difference of opinion. The meaning of the phrase, considered in connection with the context and manifest purpose of the act, is so plain and self-evident that no reasonable ground for argument or discussion upon that proposition is afforded.

The judgment of the trial court is, therefore, affirmed.

*Judgment affirmed.*

GABBERT, C. J., and WHITE, J., concur.