# UNITED STATES TRUST COMPANY *v.* NEW MEXICO.
# NEW MEXICO *v.* UNITED STATES TRUST COMPANY.

CROSS APPEALS FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

Nos. 181, 182. Argued October 30, 31, 1901.—Decided January 6, 1902.

An agreed statement of facts may be the equivalent of a special verdict, or a finding of facts upon which a reviewing court may declare the applicable law if said agreed statement is of the ultimate facts, but if it be merely a recital of testimony, or evidential fact, it brings nothing before an appellate court for consideration.

The certified statement of facts is insufficient, and presents nothing for examination.

There was no invalidity in the facts of additional assessments.

The filing of the intervening petition and the final adjudication thereon were in time.

That the receiver had been discharged before final proceedings were had, is immaterial.

The Santa Fé Company cannot claim that it was misled, in any way, as to its liability for these taxes.

No order was necessary for retaking possession.

The property was sufficiently described in the decree, and it must be assumed that the testimony warranted the description.

Until there was an identification of the property subject to taxation, and a determination of the amount of taxes due, it would be inequitable to charge penalties for non-payment.

There was no error in refusing interest prior to the decree.

On July 16, 1895, the United States Trust Company of New York filed its bill in the office of the clerk of the district court of the second judicial district of the Territory of New Mexico, praying foreclosure of a mortgage given by the Atlantic and Pacific Railroad Company. On January 10, 1896, Charles W. Smith was appointed receiver. On April 10, 1896, a decree of foreclosure was entered. The decree provided that the purchaser or purchasers, and his or their successors or assigns, should, as part consideration and purchase price of the property purchased and in addition to the sum bid, pay "any indebtedness and obligations or liabilities which shall have been legally contracted or incurred by the receiver before delivery or possession of the property sold, including the receiver's notes or certificates hereinbefore mentioned, and also any indebtedness and liabilities contracted or incurred by said defendant railroad company in the operation of its railroad prior to the appointment of receivers, which are prior in lien to said first mortgage, and which shall not be paid or satisfied out of the income of the property in the hands of the receiver, upon the court adjudging the same to be prior in lien to said mortgage and directing payment thereof, provided that suit be brought for the enforcement of such indebtedness, obligation or liability within the period allowed by any statute of limitations applicable thereto.

\* \* \* \* \* \*

"Any such claim for indebtedness, obligations or liabilities which shall not have been presented in writing to the receiver

or filed with the clerk of this court prior to the time of delivery of possession of such property, shall be presented for allowance and filed within six months after the first publication by the receiver of a notice to the holders of such claims to present the same for allowance. The receiver shall publish such notice at least once a week for the period of six weeks in one or more newspapers published in Albuquerque, New Mexico; Prescott, Arizona, and Los Angeles, California, upon the request of any purchaser or purchasers after delivery of the possession of the property to them, and any such claims, which shall not be so presented or filed within the period of six months after the first publication of such notice, shall not be enforceable against said receiver nor against the property sold nor against the purchaser or purchasers, his or their successors or assigns."

On May 3, 1897, a sale was made under the decree to A. F. Walker, R. Somers Hayes and Victor Morawetz. On May 4 the sale was confirmed. The order of confirmation contained substantially the same provisions respecting payment of obligations as the decree, and added " including also any taxes which may finally be adjudged to be a lien upon the property sold under the decree aforesaid."

According to an affidavit filed in the case this clause was entered at the suggestion of counsel for the Territory, and upon notice in open court of his intention to present a claim for the taxes hereinafter referred to. On June 22, 1897, the purchasers conveyed the property to the Santa Fé Pacific Railroad Company, and on July 1, 1897, the receiver delivered possession of the property. On October 4, 1898, he was by order of the court discharged as receiver. He failed to give the notice required by the decree for the purpose of cutting off claims against the property, and on application of the Santa Fé Pacific Railroad Company, the grantee of the purchasers, on December 19, 1898, an order was entered directing the clerk of the court to publish the notice, and a notice was published that on or before October 23, 1899, all claims against the receiver must be presented or they would be barred. On June 10, 1897, after the confirmation of the sale but while the property was in pos-

session of the receiver, the Territory of New Mexico, by leave, filed an intervening petition, claiming a lien for and payment by the receiver of certain taxes upon part of the railroad property in the county of Valencia. To this petition the trust company and receiver, on June 23, 1897, filed joint and several pleas. On the same day, without passing upon the sufficiency of the pleas, the court ordered the intervening petition dismissed on the ground that the " matters and things therein set up" were " not sufficient to entitle the said intervening petitioner to the relief sought by its petition." On appeal to the Supreme Court of the Territory this order of dismissal was affirmed. From such decision the Territory appealed to this court, which upon the first hearing affirmed the rulings below, 172 U. S. 171, 186, but on a petition for rehearing reversed the order and remanded the case for further proceedings. 174 U. S. 545.

The mandate having been returned and presented to the trial court on August 4, 1899, proceedings were there had which culminated on October 5, 1899, in a finding that the Territory was entitled to a tax lien upon a portion of the railroad property for $74,168.70, and a decree establishing such lien. From this decree both parties appealed to the Supreme Court of the Territory, which, on August 23, 1900, modified the decree by reducing the amount to $61,922.73, and awarding interest at the rate of six per cent per annum from October 5, 1899, the date of the decree in the district court. 62 Pac. Rep. 987. From this decision both parties have appealed to this court.

A statement of facts agreed to by the parties was filed in the district court, and upon this statement the decree was founded. This agreed statement contains a narrative of facts, transcripts of records and the testimony which certain witnesses would have given if they had been produced and sworn. This statement of facts was incorporated in the record transmitted to the Supreme Court of the Territory, and is the only portion of the record showing the facts presented on the hearing in the District Court. After the decision by the Supreme Court of the Territory, both parties having signified an intention to appeal to this court, the Territory applied for a statement of facts in

accordance with the act of Congress, of date April 7, 1874, in reference to practice in territorial courts and appeals therefrom, 18 Stat. 27, c. 80, which application was resisted by the counsel for the trust company and the receiver on the ground that the case had been tried in the court below upon an agreed statement of facts, whereupon the Supreme Court made this entry of record:

"Being willing and desirous that the respective parties be allowed to get their appeals before the Supreme Court of the United States in such shape as their counsel deem proper, the court hereby certifies for use upon the appeal of the said The United States Trust Company of New York and C. W. Smith, receiver, that this case was tried in the court below upon an agreed statement of facts, which agreed statement of facts was made part of the record in the district court and part of the record upon appeal to this court, and is to be a part of the record on appeal to the Supreme Court of the United States; that the said agreed statement sets out the facts of this case which were heard or considered by this court upon said appeal, and the same is hereby adopted by this court as its statement of such facts for use upon the appeal aforesaid without here repeating the same.

"And the court further certifies for use upon the appeal of the said Territory of New Mexico, in accordance with the prayer of the said appellant, the following statement of facts."

Following this was a special statement of facts, certified to under the hand of the Chief Justice.

*Mr. C. N. Sterry* for appellants. *Mr. E. D. Kenna* and *Mr. Robert Dunlap* were on his brief.

*Mr. F. W. Clancy* for appellee.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The district court dismissed the intervening petition on the ground that it presented no claim against the property or the parties. The reversal by this court of such order is an adjudi-

cation that upon the face of the petition a valid claim was presented, and is conclusive of such *prima facie* validity, not merely against objections which were in fact made but also against those which might have been made. *Cromwell* v. *Sac County*, 94 U. S. 351, 352; *Nesbit* v. *Riverside Independent District*, 144 U. S. 610, 618. We start in this inquiry then with the adjudicated fact that upon the face of the intervening petition was presented a valid claim for the taxes therein specified.

The case was heard in the district court upon an agreed statement of facts, which was thereafter certified by the Supreme Court of the Territory as a statement of facts under the act of April 7, 1874. We have had several occasions to consider the effect of an agreement of the parties as to the facts. See *Wilson, Receiver &c.* v. *The Merchants' Loan & Trust Co. ante,* 121, and cases cited in the opinion. An agreed statement of facts may be the equivalent of a special verdict or a finding of facts upon which a reviewing court may declare the applicable law if such agreed statement is of the ultimate facts, but if it be merely a recital of testimony or evidential facts, it brings nothing before an appellate court for consideration. The same rule obtains in cases of appeals from territorial courts under the act of 1874. That act in terms provides that—

"On appeal, instead of the evidence at large, a statement of the facts of the case in the nature of a special verdict, and also the rulings of the court on the admission or rejection of evidence when excepted to, shall be made and certified by the court below." *Stringfellow* v. *Cain*, 99 U. S. 610; *Idaho & Oregon Land Company* v. *Bradbury*, 132 U. S. 509.

Tested by the various authorities just cited the certified statement of facts is insufficient, and presents nothing for our examination. This disposes of most of the questions discussed by counsel.

When the mandate from this court was filed in the district court, a motion to dismiss and also pleas in abatement and in bar were successively filed, argued and overruled. We shall not attempt to notice in detail the various matters presented in the motion and pleas. It will be sufficient to state our conclusions upon the important questions.

There was no invalidity in the fact of additional assessments. Indeed, the claim in the petition was wholly for taxes based upon additional assessments for prior years, and when this court adjudged that that petition upon its face showed a tax claim against the property, it was an adjudication in favor of the validity of such additional assessments.

The filing of the intervening petition and the final adjudication thereon were in time. It is true the petition was not filed until after the sale had been confirmed and the master's deed executed, and that by the decree of confirmation the receiver was directed to then turn over the property to the purchasers. It may be also conceded as generally true that a retention by a receiver, after the time for the delivery of the property in his hands, is as agent of the purchasers. *Very* v. *Watkins,* 23 How. 469, 474. But the filing of the petition, as well as the mandate from this court, was within the time expressly named in the decree, as follows:

"Any such claim for indebtedness, obligations or liabilities which shall not have been presented in writing to the receiver or filed with the clerk of this court prior to the time of delivery of possession of such property, shall be presented for allowance and filed within six months after the first publication by the receiver of a notice to the holders of such claims to present the same for allowance."

Indeed, the petition was filed while the property was still in the hands of the receiver, and that would seem to bring the action of the intervenor within the terms of the first clause of the quotation just made. At any rate everything in the district court, even its final adjudication, was before October 23, 1899, the time fixed in the notice for the cutting off of claims against the property given at the instance of the grantee of the purchasers, to wit, the Santa Fé Pacific Railroad Company. That the receiver had been discharged before such mandate was filed, or final proceedings had, is immaterial, as the grantee of the purchaser (the present owner of the property) had made itself a party to the record by coming in and praying for the publication of a notice to cut off claims.

Neither can the Santa Fé Company claim that it was misled

in any way as to its liability for these taxes, for not only by the terms of the decree was the sale to be made subject to any indebtedness that might subsequently be charged against the property prior in lien to that of the mortgages foreclosed, but also on the confirmation of the sale and before it took title from the purchasers at such sale the order specifically included within the obligations which must be assumed any taxes which might "finally be adjudged to be a lien upon the property."

No order was necessary for retaking possession. By the terms of the decree the court, although the actual possession was surrendered, retained a constructive control which it could enforce whenever its orders were not complied with, and the present proceeding was to establish that the property was subject to these taxes. The proceeding was initiated not only when there was a qualified control, but also an actual possession of the property, and no subsequent orders of the court put an end to its jurisdiction to proceed to an inquiry as to the validity of the tax lien. The reversal of the order of dismissal by this court reinstated the proceeding in the trial court as of the date of the order of dismissal. If the decree is not complied with by the present owners of the property, it may then become necessary to order a retaking of possession.

While the description in the intervening petition of the property sought to be subjected to the taxes may be indefinite, the property is sufficiently described in the decree, and it must be assumed that the testimony warranted the description.

These are all the matters we deem it necessary to notice, and we are of opinion that in the record, so far as we are at liberty to examine it, is disclosed no error prejudicial to the rights of the appellants.

On its cross appeal the Territory, which had obtained a properly certified statement of facts sufficient for the questions it presents, contends that it was entitled to recover the amount of the tax upon 60.7 miles of road, as fixed by the assessments, whereas the court found that there were only 55.5 miles subject to taxation, and made the award upon the basis of assessments upon that extent of road. It insists that the assessments were conclusive of the amount due because no appeals to correct

them were taken, as permitted by law. It further says that in any event the statement made in the pleas and sworn to by the solicitor for the trust company and the receiver, " that about 58 miles of said right of way in said county and Territory was and is through land which was not government land, but which belonged to private individuals or corporations, and was acquired by the railroad company under and through the right conferred upon it by said act of Congress," should be held conclusive as to the number of miles subject to taxation. The trial court found, as stated, that there were 55.5 miles so subject. This finding was approved by the Supreme Court and is conclusive upon us as to the fact; and if in truth there were only so many miles of road subject to taxation, it would be inequitable to adjudge a greater liability, for that would be enforcing taxes upon property which was not subject to taxation.

Again, it is contended that the Territory was entitled to a 25 per cent penalty under section 4035 of the Compiled Laws of New Mexico, 1897, which reads:

" If any person, liable to taxation, shall fail to render a true list of his property, as required by the preceding three sections, the assessor shall make out a list of the property of such person, and its value, according to the best information he can obtain; and such person shall be liable, in addition to the tax so assessed, to the penalty of twenty-five per cent thereof, which shall be assessed and collected as a part of the taxes of such person."

It is enough to say that no such penalty was claimed in the intervening petition. Penalties are not favored in equity, and seldom will a chancellor enforce penalties in favor of a party who does not ask for them. Again, by the terms of the section, the penalty is to be " assessed and collected as a part of the taxes," and the record shows no assessment of the penalty.

A final contention is in respect to interest. Section 4066 of the Compiled Laws provides:

" On the first day of January in each year half of the unpaid taxes for the year last past, and on the first day of July in each year, the remaining half of the unpaid taxes for the year last past, shall become delinquent and shall draw interest at the

rate of twenty-five per cent per annum, but the collector shall continue to receive payments of the same after the first day of January and July until the day of the sale."

The district court ignored the provisions of this section, and allowed interest at the rate of 6 per cent per annum from the times the taxes became delinquent in the several years. The Supreme Court modified this, and allowed interest only from October 5, 1899, the date of the decision in the district court. In 1899 the legislature passed a new statute in reference to taxes. Chap. 22, p. 47, Laws of New Mexico, 1899. By section 10 of that act section 4066 of the Compiled Laws was in terms amended, and in lieu of the 25 per cent different and graded penalties were enforced. By section 34 of that act "the time for the payment of all taxes now delinquent is hereby extended to May 1, 1899, and when the same may be in litigation at the date of the passage of this act until such litigation be determined." Other provisions of this section, taken in connection with a statute passed at the same session of the legislature, (chap. 52, p. 106, Laws, 1899,) referred to by the Supreme Court of the Territory in its opinion, may render it doubtful whether the legislature intended to remove the penalty of 25 per cent interest in respect to this property; for such interest in tax proceedings is in the nature of a penalty. Yet, irrespective of this statutory question, we are of opinion that there was no error in refusing to enforce this charge against the property. The assessment was made in gross upon 60.7 miles of road, without specification of the particular miles other than that they were "embraced within said right of way where it runs over land which was held in private ownership at the time of the grant of said right of way to said railroad company." The finding of the court shows that no such length of railroad was subject to taxation, but only 55.5 miles, and those were specified and described. The owners of the road were, therefore, justified in contesting their liability to such assessment and taxation in gross, and until there was an identification of the property subject to taxation, and a determination of the amount of taxes due, it would be inequitable to charge penalties for non-payment. *Lake Shore & Michigan Southern Railway Co.*

v. *People*, 46 Mich. 193, 211; *County of Redwood* v. *Winona and St. Peter Land Co.*, 40 Minn. 512, 522. This is not a suit brought by a property holder to restrain the collection of taxes, in which case it would be incumbent upon him to pay, or tender, the amount conceded to be due, but one in which the authorities are the moving party seeking to collect taxes, and in which the liability *in toto* is denied, and the property subject to taxation not fully identified or the amount of taxes determined until the final judgment. Viewing the proceedings from an equitable standpoint, we see no error in refusing interest prior to the decree.

*The decree of the Supreme Court of New Mexico is affirmed, each party to pay the costs of its appeal to this court.*