WEST INDIA OIL Co. (P. R.), Plaintiff and Appellant, *v.* RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 8562. Argued February 12, 1943.—Decided April 15, 1943.

756

*J. Carbia Miranda* and *Miranda Esteve* for appellant. *M. Rodríguez Ramos, Acting Attorney General,* and *Eulogio Riera, Deputy Attorney General,* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The judgment involved in this appeal was rendered at the instance of the plaintiff-appellant, in consequence of an order of the lower court sustaining a motion to strike out, which, by reason of its scope and operation, had the effect of a demurrer. In these circumstances, the question to be

decided is confined to a determination of whether the trial court erred in sustaining the motion to strike out. To that end, it is well to examine the complaint, particularly the allegations thereof against which the order to strike out was directed. The complaint may be summarized as follows: From August 1925, to November 1940, the plaintiff and its predecessor in interest, West India Oil Co., drew from a bonded tank approximately 70,000 gallons of fuel oil which they sold and exported from Puerto Rico to be consumed by ships on the high seas outside the commerce of the Island. Since the plaintiff had some doubts as to whether §62 of the Internal Revenue Act of Puerto Rico, which levied a 2 per cent tax on the price of ordinary sales, was applicable to sales of fuel oil which were drawn from bonded tanks to be consumed in the manner indicated, the plaintiff in 1925 consulted the Treasurer of Puerto Rico, who stated that the said tax was not applicable to such sales. Consistent with the opinion of the Treasurer, in which the Governor also concurred, no tax was levied or collected on any of said sales during the ten years that elapsed from 1925 to 1935. In the latter year, the then Treasurer of Puerto Rico expressed his opinion that possibly §62, *supra,* might be applicable to said sales and, as a precautionary measure, ordered an investigation of plaintiff's books with a view to ascertain the number of gallons which were drawn from its bonded tank and sold on the above-mentioned conditions since the Revenue Act of 1925 had gone into effect. In view of the new attitude of the Treasury Department, the plaintiff-appellant, in September 1935, applied to the lower court for a declaratory judgment in order to dispel all doubts, and in October 1936 said judgment was rendered, declaring that §62 was not applicable to sales of the kind above indicated. Thereupon the Treasurer took an appeal to this court, which, on May 10, 1939 (54 P.R.R. 695), rendered judgment reversing the decision of the district court and sustaining the applicability of

§62. The plaintiff then appealed to the United States Circuit Court of Appeals for the First Circuit which, on December 15, 1939 (108 F. (2d) 144), affirmed the judgment of this court. Subsequently, the plaintiff took the case to the Supreme Court of the United States which, on November 12, 1940 (311 U. S. 20, 85 L. ed. 16), affirmed the decision of the Circuit Court.

It having been judicially and finally determined that §62 was applicable to sales of the kind already mentioned, the Treasurer, late in 1940, ordered another investigation of plaintiff's books and subsequently levied a tax on said sales and served demand for payment upon the plaintiff. On March 15, 1941, the Treasurer, relying on §77 of the Internal Revenue Act, demanded from the plaintiff payment, as a penalty, of 10 per cent of the amount of the tax due, such penalty amounting to $15,467.29, and in addition he demanded the payment of $105,971.12 as interest, making a total of $121,438.41, which was the amount of interest on the sales made from the time the Act of 1925 became effective until the date on which the plaintiff paid the amount of the tax proper. There is no dispute regarding the payment of said tax. There is controversy, however, as to the said sum of $121,438.41, which the plaintiff paid under protest on April 21, 1941; and in order to recover said sum, which the plaintiff alleges was illegally collected, it brought this action in the lower court.

The complaint was duly verified, and the defendant moved that there be stricken out the third, fourth, and seventh paragraphs thereof; also that there be stricken from the twelfth and thirteenth paragraphs the allegations quoted below, as some of them were conclusions of law while others consisted of argumentative or irrelevant matter. The allegations which were sought to be stricken out read as follows:

"3. That in 1925 the plaintiff, having serious doubts and being reasonably uncertain as to whether §62 of the Internal Revenue Act

of Puerto Rico, which imposes a 2 per cent tax on the price or value of daily sales, either for cash or on credit, was applicable to sales of the kind alleged in the second paragraph, proceeded to find out or ascertain the scope of said §62, long before the levying and collection of such tax.

"4. That in 1925 the plaintiff, having first consulted the Treasurer of Puerto Rico in regard to the matter, was assured by that official that said §62 was not applicable to sales of the kind mentioned in the second paragraph, as the Governor and the Treasurer of Puerto Rico had reached the conclusion that §62 of the Internal Revenue Act of Puerto Rico, whereby a 2 per cent tax is imposed on daily sales either for cash or on credit, was not applicable to sales of fuel oil to steamers for consumption on the high seas.

"7. That in 1935 the plaintiff, feeling disturbed by reason of the new attitude of the Treasurer regarding the possible application of the above cited §62 to sales of the kind already mentioned, and apprehensive that it might become liable, by acting on its own conjectures or by committing involuntary omissions, in prejudices, penalties, or surcharges, decided to apply to this Hon. Court for a declaration as to the legal course of action to be followed so as to avoid any mistake that might be prejudicial to the plaintiff.

"12. . . . relying on §77 of the Internal Revenue Act of Puerto Rico, which reads thus: 'When a person required by this Act to pay a tax on the amount of his monthly sales fails to do so in the form and at the time hereby provided, he shall pay, in addition to said tax and as part thereof, by way of penalty, ten (10) per cent of the amount due plus interest at the rates of one (1) per cent per month, to be computed from the date of expiration of the ten days' time allowed by §63 of this Act for the payment of the said tax' . . .

"13. . . . for the following reasons:

"(a) Because the fact that the plaintiff had resorted to a declaratory judgment proceeding, precisely established for the legal guidance of such persons as are uncertain as to their rights and are exposed to certain risks, is a circumstance which properly viewed overcomes any mental tendency to charge guilt, that is to say, deceit, negligence, or default in a legal obligation such as that established by §77 of the Internal Revenue Act;

"(b) Because the fact that the Treasurer of Puerto Rico gave as his opinion that §62 of the Internal Revenue Act of Puerto Rico was not applicable to sales of the kind mentioned, that he failed to levy any tax on such sales from 1925 to 1940, and that the plaintiff

resorted to the remedy of declaratory judgments so that a court might point out to both parties the way to be followed, are circumstances which properly viewed overcome any mental tendency to charge a default that is, to impose interest as compensation for damages suffered exclusively from the delay on the part of a debtor in discharging a legal obligation such as that established by §77 of the Internal Revenue Act;

"(c) Because the fact that the plaintiff entertained doubts as to the applicability of §62 to the aforesaid sales and the fact that the defendant gave his opinion that such sales were not subject to taxation under the said law, are circumstances which if properly considered, overcome any mental tendency to conclude that the time when the thing must be delivered should be the decisive factor for establishing the obligation, that is, the existence of a default on the mere ground that the legal obligation established by §77 of the Internal Revenue Act so expressly declares;

(d) Because the facts as alleged, the accidental elements of the present case creating the legal obligation established by §77, the essential nature of the obligation, and the attendant circumstances show that there has been a special situation regarding the payment of the tax or a mere delay in such payment, but not a true default, that is, the initial stage thereof or a declaration that the default had commenced and with it the accruing of the consequences attaching to a default in the payment of taxes;

"(e) Because the failure on the part of the plaintiff to pay on time the 2 per cent tax on the above-mentioned sales was not due to the common way of defaulting, as has been alleged, and this disposes of the aggravating element involved in the penal responsibility established by §77 of the Internal Revenue Act;

"(f) Because the failure on the part of the plaintiff to pay on time the 2 per cent tax on the above-mentioned sales was not due to plaintiff's negligence as has been alleged, and in such case the application of the penalty provided by §77 of the Internal Revenue Act does not lie;

"(g) Because the failure on the part of the plaintiff to pay on time a 2 per cent tax on the above-mentioned sales does not constitute the violation penalized by §77 of the Internal Revenue Act, and the imposition of such penalty by the defendant, applying the rigor of the criminal law to an administrative case, is a severe, improper, and unfair action, as it constitutes an unreasonable antisocial *plus petitio*."

In the opinion which served as a basis for the order sustaining the motion to strike, after reproducing the allegations sought to be stricken out, the lower court, in so far as pertinent, said:

"A slight reading of the foregoing allegations, which were sought to be stricken out, suffices to reach the conclusion that the only ground adduced in said allegations for requesting the return of the amounts paid under protest by way of penalty and as interest, is that the Treasurer had no right to collect them because the plaintiff entertained in good faith some serious doubts as to his obligation to pay the tax levied on the sales referred to in the complaint, to such an extent that it resorted to the courts in order that the latter might determine the legality of a tax regarding which the Governor as well as the Treasurer of Puerto Rico had concluded that it did not cover the transactions stated in the complaint. And we now hold that such allegations do not constitute a legal excuse for the failure to pay the taxes in due time. It can not be accepted that the taxpayers may delay the payment of the taxes owing to the Treasury upon the claim that in their opinion, more or less honest, they were not legally bound to pay them. Were such a claim to be upheld it might happen that the governmental machinery would cease to function by reason of the failure to collect the revenues on time. This is why the law has wisely prescribed a simple procedure which, while safeguarding the rights of the Treasury, at the same time enables the taxpayer to resort to the courts in order to enforce his rights. By paying the tax under protest and later requesting the refund thereof, the taxpayer, if his contention prevails, may obtain the return of his money with interest thereon and the costs incurred, including also, at the discretion of the court, an award of attorney's fees. The plaintiff herein failed to follow this procedure, although it could have done so. It chose to unduly retain moneys which should have been in the hands of the Treasury long before, to deprive the Government of the use thereof, which government may possibly have had to procure loans or incurred indebtednesses in order to provide for its immediate needs, and at the end of a litigation which was carried to the highest tribunal of the Nation, after it had beed advised that its obligation to pay had been overdue for many years, it sought to evade compliance with §77 of the Internal Revenue Act by the mere allegation that it believed, in good faith, that it was not bound to pay the said tax. Section

77, *supra,* definitely prescribes that a taxpayer who fails to make payment at the time and in the form provided by the act, shall pay, in addition to said tax and *as part thereof,* ten (10) per cent of the amount due plus interest at the rate of one (1) per cent per month, to be computed from the date of expiration of the ten days' time allowed by §63 of the same act. These provisions could not be clearer. Nowhere therein is it said that the taxpayer is not bound to pay the surcharges when he has failed to pay them *in good faith.* We can not read into the law provisions which the lawmaker did not insert therein. Were we to do so we would be indulging in the plainly reprehensible vice of judicial legislation. The authorities uphold these principles."

The lower court then cited the decisions on which it based its conclusion, sustaining the motion to strike.

█ The decisions cited by the court *a quo* are absolutely correct. They state the rule applicable in ordinary cases. But in those cases where there are extraordinary circumstances which justify a delay in the payment of the tax, so that the imposition of the penalty—that is the payment of 10 per cent of the amount of the tax plus interest at the rate of 1 per cent computed from the time when the former should have been paid—would be manifestly unjust and oppressive, the courts have construed the statute in the sense that it could not have been the intention of the lawmaker to impose a penalty under such circumstances. Such a construction does not involve the indulging in what the learned judge of the lower court calls "the plainly reprehensible vice of judicial legislation." Far from incurring in any vice, what the courts do in such case is to vitalize the statute by giving effect to its spirit so as to attain the sound purpose of fully carrying out the intention of the lawmaker. But even assuming that, strictly speaking, such conduct could be characterized as judicial legislation, the practice is not always reprehensible. It can not be gainsaid that the courts sometimes legislate; but they are permitted to do so only in order to cover situations which, although apparently com-

prised in the strict letter of the law, evidently do not come within its spirit. Accordingly, it was said by Mr. Justice Holmes, in his dissenting opinion in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 221:

"I recognize without hesitation that judges do and must legislate, but they can do so only interstitially; . . ."

The Supreme Court of the United States made application of this principle in the case of *United States* v. *Kirby* (7 Wall.) 74 U. S. 482, 486, when, speaking through Mr. Justice Field, it said:

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter.

"The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted, 'that whoever drew blood in the streets should be punished with the utmost severity,' did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit. The same common sense accepts the ruling, cited by Plowden, that the statute of 1st Edward II, which enacts that a prisoner who breaks prison shall be guilty of felony, does not extend to a prisoner who breaks out when the prison is on fire—'for he is not to be hanged because he would not stay to be burnt.' And we think that a like common sense will sanction the ruling we make, that the act of Congress which punishes the obstruction or retarding of the passage of the mail, or of its carrier, does not apply to a case of temporary detention of the mail caused by the arrest of the carrier upon an indictment for murder.''

██ The judge of the lower court doubtless failed to consider to its fullest extent the scope of the facts set forth in the complaint, which facts he should have assumed to be true for the purpose of the determination of the motion to strike. The plaintiff did not allegé as an only ground for claiming the refund of the amounts paid under protest by

way of penalty, that it entertained serious doubts as to its obligation to pay the tax "regarding which (quoting from the decision) the Governor as well as the Treasurer of Puerto Rico had concluded that it did not cover the transactions stated in the complaint." (Parenthetical matter supplied.) We repeat, that was not the only ground. It should be observed that, as stated in the complaint, from 1925, when the Internal Revenue Act became effective, to 1935, that is, over a period of ten consecutive years, the Treasury Department, which is charged by law with the duty of collecting taxes, held, through its chief—the Treasurer—that the tax imposed by §62 of said act was not applicable to sales made under the conditions described in the complaint, and, in harmony with that opinion, during that long period of time no attempt was ever made to levy or collect said tax. If those facts are accepted as true, how could we require that the plaintiff should have paid that tax under protest to avoid the penalty when the Treasurer himself, charged with the collection thereof, insisted that the plaintiff did not owe such tax?

It seems opportune to state here, by way of analogy, the doctrine upheld by the Supreme Court of Pennsylvania in the case of *Breisch* v. *Coxe*, 81 Pa. St. 336, cited in the monograph entitled "Effect of Attempt to Pay Taxes Frustrated by Officer," which appears in 17 Ann. Cas. 820-3, thus:

"It must be conceded that the payment of taxes is a duty, and a failure to perform it is the fault of the owner. But payment is one thing, and the steps leading to it are another. For the latter the owner is not responsible. He cannot assess himself, or know what is charged against him. He must await the action of the agents of the law. He cannot pay until he is informed of what he is to pay. To perform the duty of payment he must apply to the treasurer for the taxes charged against his land. If this officer fail to give him the information on demand, on what just principle shall it be said he has not performed his duty? It is said there are the tax books open to inspection, let him search them. But this is neither his business nor his duty."

In the case of *Jaynes* v. *Heron* (N. M. 1942), 142 A.L.R. 1191, 1197, there is cited with approval the decision in *Scudder* v. *Hart,* 45 N. M. 76, 110 P. (2d) 536, 538, wherein the following is quoted from Cooley on Taxation:

"Tender of the tax by anyone who has a right to make payment is effectual to prevent a sale, whether the tender is accepted or not. (Citing authorities.) . . . If the owner of land or the holder of a lien thereon applies in good faith to the proper officer for the purpose of ascertaining the amount of the taxes and of paying the same, and is prevented by such officer's mistake, wrong, or fault, such attempt to pay is generally regarded as equivalent to payment. (Citing more authorities.) See *Gammill* v. *Mann,* 41 N. M. 552, 72 P. (2d) 12."

It is true that in the present case it is not sought to set aside a sale made for nonpayment of taxes; but it is evident that if such conduct on the part of the taxpayer is sufficient to annul the sale, the more so should it be sufficient to excuse a delay in the payment of the tax for the purpose of the imposition upon him of the punishment involved in the application of the penalty. From the complaint it does not expressly appear that the plaintiff had actually made a tender; but from the attitude of the Treasurer it may be inferred that such a tender would have been useless, in view of the opinion held by said officer in regard to his right to collect the tax. Let us not forget the legal maxim which says that the law forces no one to do useless things. If the Treasurer had not stated his opinion in the manner above indicated, the plaintiff would then have had the opportunity of paying under protest. As was said in 3 Cooley on Taxation, 4th ed., p. 2538, note 29, "penalties for nonpayment of taxes can only be imposed after the taxpayer has had an opportunity to pay and fails to do so." To the same effect see the monograph on the subject published in 17 Ann. Cas. 820-2.

In the case of *Dravo Contracting Co.* v. *James* (1940), 114 F. (2d) 242, 247, the court speaking through Judge Parker said:

"Another question presented by the appeal is whether penalties or interest should be allowed upon the amount of taxes found to be due. We think, however, that the court below was unquestionably right in denying penalties. . . . Taxpayer was justified in contesting liability for the taxes as assessed; and until the income to serve as the basis for taxation shall be ascertained and the taxes thereon determined, it would be inequitable to allow penalties for nonpayment to be collected. *U. S. Trust Co.* v. *New Mexico,* 183 U. S. 535, 544 . . .

". . . Until the amount of the tax is fixed, so that the taxpayer may know with certainty what amount he is required to pay, we think it would be inequitable to charge him with interest. Particularly is this true in view of the fact that taxpayer has been furnished no opportunity under the law of paying the tax under protest and suing for the recovery of the illegal portion."

As the judge of the lower court, in his decision sustaining the motion to strike, laid great emphasis on the fact that §77 of Internal Revenue Act prescribes that a taxpayer who fails to make payment at the time and in the form provided by the act, shall pay in addition, *as a part of the tax,* the penalty to which we have referred, it seems advisable to state that in the case of *U. S. Trust Company* v. *New Mexico, supra,* the statute construed used the same phrase, and in spite of that, the Supreme Court of the United States, after considering the attendant circumstances, held that the taxpayer was not bound to pay the penalty.

We have already stated that in the present case, taking as true the allegations of the complaint, the taxpayer did not have the opportunity to pay under protest until the Treasurer changed his opinion at the time of the filing of the proceeding for a declaratory judgment, about 1935, since until then said officer had held the view that the act was not applicable to the sales in question.

In the recent case of *Com.* v. *Cincinnati, N. O. & T. P. R. Co.* (Ky. 1941), 137 A.L.R. 301, the tax became due sometime between the expiration of the term of the officer who must collect it and the entry upon the duties of his office

and furnishing of a bond by his elected successor. According to a letter from the Attorney General of the Commonwealth, dated January 31, 1938, and addressed to the county clerk of Muhlenberg County, the law did not authorize the outgoing officer to collect the tax in controversy. His successor could not collect it either, as he had not yet furnished a bond. Subsequently, the Legislature clarified the situation by amending the law, and the taxpayer, within the time allowed to him, paid the amount to the former sheriff (the person later authorized to collect it) without including the penalty. On January 4, 1939, the State Revenue Commissioner filed an action against the defendant to recover all penalties and interest. It was held that the *bona fide* delay in the payment of the tax was justified. The court said:

"The law in such situation does not exact or demand of the taxpayer the pound of flesh but recognizes good faith conduct and bona fide action as relief against any such demand."

The court finally reached the conclusion that, in view of the circumstances, the lower court had correctly held that the taxpayer was not liable for the payment of the penalty, and properly dismissed the petition.

In our judgment, the circumstances stated in the complaint show the good faith of the plaintiff until the date above indicated. That its doubts to the effect that §62 was not applicable to the sales of fuel oil were not capricious or arbitrary is shown, not only by the opinion which the Treasurer held for ten years, but also by the fact that the District Court of San Juan had thus construed the law, that one of the justices of this court had dissented, and, lastly, that upon the case being taken to the Supreme Court of the United States, two of its justices dissented from the opinion whereby the judgment of the Circuit Court of Appeals was affirmed. See the monograph entitled, "Doubt as to liability for, or as to person to whom to pay, tax, as affecting liability for penalties and interests," which appears in 137 A.L.R. 306.

Since the plaintiff could and should have paid the tax under protest in 1935 but failed to do so, it is proper to impose the penalty upon it; but the same should be confined to 10 per cent of the amount due on account of the tax proper, plus interest on the amount of said tax, at the rate of 1 per cent per month, from the date above indicated in 1935.

■ Now, as was said in *People* v. *Texas* Co. (Colo. 1929), 275 Pac. 896, 902, in the matter of penalties for nonpayment of a tax within the time fixed by law, each case must be decided on its own merits, taking into account the attendant circumstances, and it should not serve as a precedent for other cases unless similar circumstances are involved.

■ From what has been said, it follows that the decision of the lower court is erroneous in so far as it ordered the striking out of the third, fourth, and seventh paragraphs of the complaint, since the allegations contained in said paragraphs set forth the reasons which preclude the defendant from imposing on the plaintiff the whole of the penalty, that is, the payment of 10 per cent of the amount of the tax plus interest at the rate of 1 per cent from 1925 to the date of the payment of said interest; that the trial court acted correctly in ordering the striking out of the above-transcribed portion of the twelfth paragraph, as the same is a conclusion of law, such an allegation being unnecessary since the court takes judicial notice of the law; and, lastly, that the court also acted correctly in ordering the striking out of the subdivisions marked (*a*), (*b*), (*c*), (*d*), (*e*), (*f*), and (*g*) of the thirteenth paragraph of the complaint, since said allegations constitute argumentative matter, proper for a brief but improper to be included in a complaint.

For the reasons stated the judgment appealed from, whereby the complaint was dismissed, must be reversed and the case remanded to the lower court with directions to grant a reasonable term to the plaintiff to amend its complaint by

striking out the particulars to which we have referred; and to proceed further with this case in a manner not inconsistent with the principles set forth in this opinion.