WEST INDIA OIL CO. (P. R.), demandante y apelante, *v.* RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, demandado y apelado.

Núm. 8562.—*Sometido:* Febrero 12, 1943. *Resuelto:* Abril 15, 1943.

*J. Carbia Miranda* y *Miranda & Miranda Esteve,* abogados de la apelante; *Hon. Procurador General Interino M. Rodríguez Ramos* y *Eulogio Riera, Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

La sentencia objeto de este recurso fué dictada a instancias de la demandante apelante, a base de una resolución de la corte inferior declarando con lugar una moción eliminatoria que por su alcance y consecuencias tiene el efecto de una excepción previa. En tales circunstancias, la cuestión a resolver se reduce a determinar si incurrió en error la corte sentenciadora al declarar con lugar la moción eliminatoria. A ese fin conviene conocer la demanda y especialmente las alegaciones que fueron objeto de la orden de eliminación. La demanda puede resumirse así: Desde el mes de agosto de 1925 hasta noviembre de 1940 la demandante y su antecesora en título, West India Oil Co., extrajeron y vendieron de un tanque de adeudo (*bonded tank*) aproximadamente 70,000

784

galones de aceite combustible que exportaron de Puerto Rico para ser utilizados por las embarcaciones en sus viajes por alta mar, fuera del comercio de la Isla. Dudando la demandante si la sección 62 de la Ley de Rentas Internas de Puerto Rico, que imponía un tributo de 2 por ciento sobre el precio de las ventas ordinarias, era aplicable a las ventas de aceite combustible extraído de tanques de adeudo para ser consumido en la forma indicada, consultó en 1925 con el entonces Tesorero de Puerto Rico, quien le manifestó que dicho impuesto no era aplicable a tales ventas. Consistente con esa opinión del Tesorero, de la cual participaba también el Gobernador, no se impuso ni se cobró tributo alguno sobre dichas ventas en los diez años comprendidos entre 1925 y 1935. En esta última fecha el entonces Tesorero de Puerto Rico expresó la posibilidad de que la sección 62 supra fuese aplicable a dichas ventas y como medida de precaución ordenó que se practicase una investigación de los libros de la demandante a fin de determinar el número de galones extraídos de su tanque de adeudo y vendidos en las condiciones antedichas desde que empezó a regir la Ley de Rentas Internas en 1925. En vista de la nueva actitud asumida por el Departamento de Hacienda, la demandante apelante en septiembre de 1935 recurrió a la corte inferior en solicitud de una sentencia declaratoria que despejase la incertidumbre, recayendo dicha sentencia en octubre de 1936, declarando que la sección 62 no era aplicable a ventas de la naturaleza indicada. Apeló el Tesorero para ante este tribunal, dictándose sentencia en 10 de mayo de 1939 (54 D.P.R. 732) que revocó la de la corte de distrito y sostuvo la aplicabilidad de la sección 62. Apeló entonces la demandante para ante la Corte de Circuito de Apelaciones de los Estados Unidos para el Primer Circuito, siendo confirmada la de este tribunal por sentencia de 15 de diciembre de 1939 (108 F. (2d) 144). Por último recurrió la demandante para ante la Corte Suprema de los Estados Unidos, la que, con fecha 12 de no-

iembre de 1940, confirmó a su vez la de la Corte de Circuito 311 U. S. 20, 85 L. ed. 16).

Resuelto judicialmente y de manera definitiva que la sección 62 era aplicable a ventas de la naturaleza indicada, el Tesorero, a fines de 1940, ordenó otra investigación de los libros de la demandante y posteriormente impuso tributo a dichas ventas y requirió de pago a la demandante. El 15 de marzo de 1941 el Tesorero, basándose en la sección 77 de la Ley de Rentas Internas, exigió a la demandante en concepto de penalidad el 10 por ciento de la cantidad representativa del impuesto propiamente dicho, ascendiendo dicha penalidad a $15,467.29, y en adición exigió, por concepto de intereses, el pago de $105,971.12, o sea un total de $121,438.41, que era el importe de los intereses sobre las ventas efectuadas desde que empezó a regir la ley en 1925 hasta la fecha en que la demandante pagó la contribución propiamente dicha. Sobre el pago de dicha contribución no existe controversia alguna. La hay, sin embargo, en cuanto a la referida suma de $121,438.41, que la demandante pagó bajo protesta el 21 de abril de 1941, y para recobrar dicha suma, que alega le fué ilegalmente cobrada, instituyó este pleito en la corte inferior.

La demanda fué debidamente jurada y de ella solicitó el demandado que se eliminasen los párrafos tercero, cuarto y séptimo; y de los párrafos duodécimo y décimotercero, las porciones que más adelante se transcribirán, por ser unas, conclusiones de derecho, y otras, materia argumentativa e irrelevante. La materia de que se solicita eliminación dice así:

"3. Que en 1925, la demandante, abrigando serias dudas y azuzada por razonable incertidumbre con respecto a si la sección 62 de la Ley de Rentas Internas de Puerto Rico, por la cual se cargan tributos del 2 por ciento sobre el precio o valor (dado de contado o a crédito) de las ventas diarias, era aplicable a ventas de la naturaleza alegada en el hecho segundo, procedió a descubrir o averiguar el alcance de dicha sección 62, mucho antes de que el tributo se impusiere y de que la situación del cobro contributivo tuviese efecto."

"4. Que en 1925, la demandante, previa consulta que llevara a cabo con el Tesorero de Puerto Rico, recibió de éste la seguridad de que dicha sección 62 no era aplicable a las ventas de la naturaleza referida en la alegación segunda, porque el Gobernador y el Tesorero de Puerto Rico habían llegado a la conclusión de que dicha sección 62 de la Ley de Rentas Internas de Puerto Rico que impone una contribución del 2 por ciento sobre el precio o valor de las ventas diarias bien de contado o bien a crédito, no era aplicable a las ventas de aceite combustible a vapores para consumo en alta mar."

" 7. Que en 1935 la demandante, apremiada por la nueva actitud que el Tesorero asumía con respecto a la posible aplicación de la sección 62 tantas veces citada, a ventas de la naturaleza descrita, pensando en el riesgo que podía correr de actuar solamente guiada por sus propias conjeturas o de incurrir por omisiones involuntarias en posibles predisposiciones, penalidades y recargos, decidió solicitar que esta Hon. Corte la señalara el camino legal a seguir antes de que un paso en falso ocasionara a la demandante daños y perjuicios.'

" 12. . . . basándose en la sección 77 de la Ley de Rentas Internas de Puerto Rico que dice así: 'Cuando una persona obligada por esta Ley a pagar contribución sobre el montante de sus ventas mensuales no lo hiciera en la forma y tiempo establecidos en la misma, pagará, además de dicha contribución y como parte de ella, en concepto de penalidad, un diez (10) por ciento de la cantidad adeudada e intereses a razón del uno (1) por ciento mensual, computables desde la fecha en que se vencieron los diez días de término concedidos por la sección 63 de esta Ley para el pago de la expresada contribución' . . .' "

" 13. . . . por las siguientes razones:

" (a) porque el hecho de haber recurrido la demandante al procedimiento de decretos declaratorios establecidos casualmente para dar pauta o guía legal a una persona que se encuentra insegura en sus derechos y en situación de peligro, es circunstancia que examinada propiamente destruye cualquier tendencia mental hacia la determinación de un concepto de penalidad, es decir, a la incurrencia en dolo, negligencia o contravención de una obligación legal como la establecida por la sección 77 de la Ley de Rentas Internas;

" (b) porque el hecho de haber considerado el Tesorero de Puerto Rico que la sección 62 de la Ley de Rentas Internas de Puerto Rico no era aplicable a ventas de la naturaleza mencionada, el no haber impuesto contribución alguna sobre tales ventas desde 1925 a 1940, y el haber la demandante recurrido al procedimiento de decretos

declaratorios para que una corte diera a ambas partes un camino a seguir, son circunstancias que examinadas propiamente destruyen cualquier tendencia mental hacia la determinación de un concepto de morosidad no recíproca, es decir, de imposición de intereses como compensación a daños sufridos por la tardanza exclusiva de un deudor en el pago de una obligación legal similar a la establecida por la sección 77 de la Ley de Rentas Internas;

''(c) porque el hecho de haber existido dudas de parte de la demandante en cuanto a la aplicación de la sección 62 a las ventas referidas y el haber opinado el demandado que tales ventas no estaban sujetas a contribución por dicha ley, son circunstancias que examinadas propiamente destruyen cualquier tendencia mental hacia la conclusión de que la época en que había de entregarse la cosa fué motivo determinante para establecer la obligación, es decir, de la existencia de mora por la mera razón de que la obligación legal establecida por la sección 77 de la Ley de Rentas Internas lo declara así expresamente;

''(d) porque, dados los hechos ocurridos, según han sido alegados, los elementos accidentales que han concurrido en este caso particularizando la obligación legal creada por la sección 77, la naturaleza de la obligación, lo esencial de ésta y las circunstancias de la misma, resulta que ha habido un estado especial de pago contributivo o simple retraso, pero no resulta que ha habido constitución en mora, es decir, comienzo de ella o declaración de que la mora empezara y con ello empezara también a surtir el retraso los efectos que de la mora son propios;

''(e) porque el hecho de no haber pagado a tiempo la demandante la contribución del 2 por ciento sobre las ventas mencionadas no fué debido a falta de cumplimiento normal, como ha sido alegado, lo que elimina el carácter de agravación de la responsabilidad penal establecida por la sección 77 de la Ley de Rentas Internas;

''(f) porque en el hecho de no haber pagado a tiempo la demandante la contribución del 2 por ciento sobre las ventas mencionadas no intervino la negligencia de la demandante como ha sido alegado, y en tales casos no cabe la exacción de la pena que impone la sección 77 de la Ley de Rentas Internas;

''(g) porque el hecho de no haber pagado a tiempo la demandante la contribución del 2 por ciento sobre las ventas mencionadas no constituye la infracción que castiga la pena impuesta por la obligación legal, establecida por la sección 77 de la Ley de Rentas Internas y la imposición de tal pena como lo ha hecho el demandado

llevando el rigorismo del derecho penal al derecho administrativo, es severo, impropio e injusto por constituir un *plus petitio* irrazonable y antisocial.''

En la opinión que sirvió de base a la resolución declarando con lugar la moción eliminatoria, después de exponer las alegaciones de que se solicitó eliminación, la corte inferior en lo pertinente se expresó así:

''Basta una ligera lectura de las anteriores alegaciones, cuya eliminación se solicita, para llegar a la conclusión de que el único fundamento aducido en dichas alegaciones para solicitar el reintegro de las cantidades pagadas bajo protesta como penalidad e intereses es que el Tesorero no tenía derecho alguno a imponerlos porque la demandante abrigaba serias dudas, de buena fe, sobre su obligación de pagar los tributos impuestos sobre las ventas a que la demanda se refiere, hasta el extremo de acudir a los tribunales para que éstos resolviesen sobre la legalidad de un impuesto en que tanto un Gobernador como un Tesorero de Puerto Rico habían llegado a la conclusión de que no cubría las transacciones relatadas en la demanda. Y resolvemos ahora que tales alegaciones no constituyen excusa legal alguna para haber dejado de pagar las contribuciones a su debido tiempo. No es posible que los contribuyentes -puedan demorar el pago. de sus tributos al fisco bajo la alegación de que en su creencia, más o menos honesta, no estaban en la obligación legal de satisfacerlos. De sostenerse tal teoría podría darse el caso que no funcionara la maquinaria gubernamental porque las rentas no ingresaban a su oportunidad. Es por eso que la ley, sabia, ha marcado un procedimiento sencillo que salvaguardiando los derechos del erario, permite al mismo tiempo que el contribuyente pueda recurrir a los tribunales y allí discutir sus derechos. Pagando las contribuciones bajo protesta y solicitando más tarde su reintegro, puede el contribuyente, si triunfa su contención, obtener la devolución de su dinero con sus intereses, más las costas incurridas, incluyéndose también a discreción del tribunal una cantidad para honorarios de abogado. La demandante, que pudo hacerlo, no siguió este procedimiento. Prefirió retener indebidamente un dinero que ha tiempo debía haber estado en manos del tesoro, privar de su uso al gobierno-que posiblemente tuvo que obtener préstamos e incurrir en deudas para atender a sus atenciones inmediatas, cuando al final de una contienda litigiosa que lleva hasta el tribunal más alto de la nación, advertido ya que su obligación de

pagar estaba vencida hace muchísimos años, quiere evadir el cumplimiento de la sección 77 de la Ley de Rentas Internas con la simple alegación de que era su creencia *bona fide* que no estaba obligada a pagar la aludida contribución. La sección 77, supra, manda terminantemente que el contribuyente que no hiciere el pago en el tiempo y forma establecidos por la ley, pagará, además, *como parte de la contribución,* un diez (10) por ciento de la cantidad adeudada e intereses a razón del uno (1) por ciento mensual, computables desde la fecha en que se vencieron los diez días de término concedidos por la sección 63 de la misma ley. Más claras no pueden ser estas disposiciones. En ninguna parte de ellas se dice que el contribuyente no está obligado a pagar los recargos cuando dejase de satisfacerlos de *buena fe.* No podemos intercalar en la ley conceptos que no insertó el legislador. Sería incurrir en el a todas luces condenable vicio de legislación judicial. La jurisprudencia sostiene estos principios.''

A continuación cita la corte inferior la jurisprudencia en que basa su conclusión declarando con lugar la moción eliminatoria.

La jurisprudencia citada por la corte *a quo* es enteramente correcta. Expone la regla aplicable en casos ordinarios. Pero en aquellos en que concurren circunstancias extraordinarias que justifican la dilación en el pago de la contribución, de tal forma que imponer la penalidad—es decir, el pago del 10 por ciento del montante de la contribución más intereses a razón de 1 por ciento desde que debió pagarse aquella—resultaría manifiestamente injusto y opresivo, los tribunales han interpretado el estatuto en el sentido de que no pudo ser la intención del legislador imponer la penalidad en tales circunstancias. Al así interpretar la ley no se incurre en lo que el ilustrado juez de la corte inferior llama ''el a todas luces condenable vicio de legislación judicial''. Lejos de incurrir en vicio alguno, lo que en ese caso hacen los tribunales es dar vida a la ley, dándole efecto a su espíritu para lograr así el laudable propósito de cumplir a cabalidad la intención del legislador. Pero asumiendo que en el estricto sentido de la palabra tal actuación

pudiera calificarse de legislación judicial, la práctica no es siempre reprobable. No puede negarse que los tribunales a veces legislan, pero sólo les es permitido hacerlo para cubrir situaciones que si bien aparentemente están comprendidas en la letra estricta de la ley, evidentemente no lo están dentro de su espíritu. A este efecto se dijo por el Juez Holmes en su opinión disidente emitida en *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 221:

"Reconozco sin vacilación que los jueces legislan, y es su deber legislar, pero sólo pueden hacerlo para llenar vacíos (*interstitially*); . . ."

La Corte Suprema de los Estados Unidos hizo aplicación de este principio en el caso de *United States* v. *Kirby,* 7 Wall., 74 U. S. 482, 486, cuando por voz de su Juez Asociado Sr. Field se expresó así:

"Las leyes deben recibir una interpretación sensata (*sensible*). Vocablos de significación general deben ser limitados en su aplicación, de suerte que no conduzcan a la injusticia, a la opresión o a consecuencias absurdas. Por lo tanto, siempre se presumirá que la legislatura tuvo la intención de intercalar excepciones en el lenguaje del estatuto, para evitar así dichos resultados. El espíritu de la ley debe prevalecer en tales casos sobre su letra.

"El sentido común aprueba la sentencia mencionada por Puffendorf, que declaró que la ley de Bolonia que prescribía que 'quien hiciese derramar sangre en las calles sería castigado con la mayor severidad' no era aplicable al cirujano que abría las venas de una persona que caía en la calle atacada de enfermedad. Ese mismo sentido común acepta la decisión citada por Plowden al efecto de que el estatuto de Eduardo II dispositivo de que la persona que escapase de la prisión sería culpable de *felony,* no era de aplicación a un preso que salía cuando la prisión cogía fuego, 'porque él no debe ser ahorcado, por no quedarse para ser quemado', y creemos que el mismo sentido común sancionará nuestra decisión al efecto de que la ley del Congreso que castiga la obstrucción o retraso del correo o su portador no se aplica a un caso de dilación temporal del correo motivado por el arresto de su portador para responder de una acusación de asesinato."

■■ Sin duda el juez de la corte inferior no apreció en toda su extensión el alcance de los hechos expuestos en la demanda, hechos que debió asumir como ciertos a los efectos de la resolución sobre la moción eliminatoria. No es que la demandante, como único fundamento para reclamar el reintegro de las cantidades pagadas bajo protesta por concepto de penalidad, alegue el hecho de que ella abrigaba serias dudas acerca de su obligación de pagar el impuesto "que (citando de la resolución) tanto un Gobernador como un Tesorero de Puerto Rico habían llegado a la conclusión de que no cubría las transacciones relatadas en la demanda". (Paréntesis nuestro.) No es ése el único fundamento, repetimos. Obsérvese que, conforme se expresa en la demanda, desde el año 1925 en que empezó a regir la Ley de Rentas Internas, hasta el 1935, es decir, por espacio de diez años consecutivos, el Departamento de Hacienda, a quien por ministerio de la ley incumbe cobrar las contribuciones, sostuvo, por medio de su jefe—el Tesorero—, que la contribución impuesta por el artículo 62 de dicha Ley no era aplicable a ventas verificadas en las condiciones descritas en la demanda, y, congruente con esa opinión, durante ese largo lapso jamás se intentó imponer o cobrar tal tributo. Aceptando que esos son los hechos, ¿cómo vamos a exigir a la demandante que pagase esa contribución bajo protesta para evitar el pago de la penalidad, si el propio Tesorero, encargado de cobrarla, insistía en que la demandante no debía tal impuesto?

Parece oportuno consignar aquí por analogía el principio envuelto en lo dicho por la Corte Suprema de Pennsylvania en el caso de *Breisch* v. *Coxe*, 81 Pa. State 336, citado en la monografía titulada "Efecto de tratar de pagar contribuciones frustrado por el funcionario", que aparece en 17 Ann. Cas. 820-3, a saber:

"Debe concederse que el pago de contribuciones es un deber y el dejar de cumplirlo es culpa del propietario. Pero el pago es una cosa y las gestiones conducentes a llevarlo a efecto son otra. De estas últimas el propietario no es responsable. Él no puede impo-

nerse (*assess*) a sí mismo una contribución, o saber el montante d
lo que se le cobra. Debe esperar la acción de los agentes de la ley
Él no puede pagar hasta que haya sido informado de lo que tien
que pagar. Para cumplir la obligación de pagar debe recurrir a
Tesorero para informarse en cuanto a las contribuciones que se l
exigen. Si este funcionario deja de darle la información solicitada
¿en qué justo principio podemos basarnos para decir que el contri
buyente no ha cumplido su deber? Podría decirse que ahí están lo
libros de contribuciones abiertos para inspección y que él debe bus
carlos. Pero esto ni le incumbe ni es su deber hacerlo."

En el caso de *Jaynes* v. *Heron* (N. M. 1942), 142 A.L.R.
1191, 1197, se cita con aprobación el caso de *Scudder* v. *Hart*
45 N. M. 76, 110 P. (2d) 536, 538, en el que a su vez se cita
de Cooley *on Taxation* lo siguiente:

"Un ofrecimiento de pago (*tender*) por el que tiene el derecho
a hacerlo, tiene el efecto de impedir una venta, sea o no aceptado
el ofrecimiento. . . . Si el dueño de un terreno se dirige de buena
fe al funcionario correspondiente con el objeto de determinar el
importe de las contribuciones y de pagarlas, y es impedido de
hacerlo por error, culpa o falta de dicho funcionario, el acto de
tratar de pagar (*attempt*) generalmente es considerado como equi-
valente al pago. (Cita más autoridades.) Véase *Gamill* v. *Mann*,
41 N. M. 552, 72 P. 2d 12."

Es verdad que en el presente caso no se trata de anular
una venta por falta de pago de contribuciones, pero es evi-
dente que si esa actuación por parte del contribuyente es
bastante para anular la venta, con mayor razón debe bastar
para excusar la dilación en el pago de la contribución a los
efectos de imponerle el castigo que representa la aplicación
de la penalidad. De la demanda no aparece expresamente
que la demandante llegara a hacer el ofrecimiento de pago
(*tender*), pero de la actitud del Tesorero se infiere que ese
ofrecimiento hubiera sido inútil dada la opinión que dicho
funcionario tenía con respecto a su derecho a cobrar el im-
puesto. No olvidemos la máxima legal que dice que la ley
no exige cosas inútiles. Si el Tesorero no hubiera opinado
en la forma indicada, la demandante hubiera tenido entonces

la oportunidad de pagar bajo protesta. Como se dice en 3 Cooley *on Taxation,* 4a. ed., pág. 2538, nota 29, "sólo puede imponerse la penalidad por falta de pago cuando el contribuyente ha tenido una oportunidad de pagar y deja de hacerlo." Véase al mismo efecto la monografía sobre la materia, en 17 Ann. Cas. 820–2.

En el caso de *Dravo Contracting Co.* v. *James* (1940) 114 F. (2d) 242, 247, la corte, por voz de su Juez Parker, dijo:

"Otra cuestión presentada en la apelación es si las penalidades o intereses deben concederse sobre el importe de las contribuciones que se resolvió eran adeudadas. Creemos, sin embargo, que la corte inferior actuó sin duda correctamente al denegar las penalidades. . . . El contribuyente estuvo justificado en rehusar el pago de las contribuciones según habían sido impuestas; y hasta que el ingreso que había de servir de base para la contribución fuese determinado y la contribución correspondiente fijada, no sería equitativo permitir que se cobrasen penalidades por la falta de pago. *U. S. Trust Co.* v. *New Mexico,* 183 U. S. 535, 544 . . .

". . . Mientras el importe de la contribución no sea fijado, de modo que el contribuyente pueda saber con seguridad qué cantidad se le requiere pagar, no sería equitativo cargarle intereses. Esto es especialmente cierto en vista del hecho de que al contribuyente no se le ha dado una oportunidad, de acuerdo con la ley, para pagar la contribución y reclamar judicialmente la devolución de la parte ilegalmente cobrada."

Como el juez de la corte inferior, en su resolución declarando con lugar la moción eliminatoria, puso gran énfasis en el hecho de que el artículo 77 de la Ley de Rentas Internas prescribe que el contribuyente que no hiciere el pago en el tiempo y forma establecidos por la ley, pagará además, *como parte de la contribución,* la penalidad a que venimos haciendo referencia, parece conveniente consignar que en el caso de *U. S. Trust Company* v. *New Mexico,* supra, el estatuto interpretado usaba la misma frase y ello no obstante la Corte Suprema de los Estados Unidos, considerando las circunstancias concurrentes, declaró que el contribuyente no venía obligado a pagar la penalidad.

Ya hemos dicho que en el presente caso, aceptando como ciertas las alegaciones de la demanda, la contribuyente no tuvo la oportunidad de pagar bajo protesta hasta que el Tesorero varió su opinión para la fecha en que se radicó el procedimiento sobre sentencia declaratoria, allá por el 1935, toda vez que dicho funcionario, hasta entonces, opinaba que la ley no era aplicable a las ventas en cuestión.

En el reciente caso de *Com.* v. *Cincinnati, N. O. & T. P. R. Co.* (Ky. 1941) 137 A.L.R. 301, la contribución venció en una fecha comprendida entre el cese del funcionario que debía cobrarla y la toma de posesión y prestación de fianza de su sucesor electo. De acuerdo con una carta del Procurador General del Estado, fechada 31 de enero de 1938, dirigida al secretario de la corte del condado de Muhlenberg, la ley no autorizaba al funcionario saliente para cobrar la contribución en controversia. Tampoco podía cobrarla el sucesor por no haber prestado la fianza. Posteriormente, la legislatura enmendó la ley, aclarando la situación, y el contribuyente, dentro del término concedídole, pagó el montante al anterior *sheriff*—persona autorizada posteriormente para cobrarlo—sin incluir penalidad. En enero 4 de 1939 el Comisionado de Rentas del Estado radicó demanda contra el contribuyente, en cobro de penalidades e intereses. Se resolvió que la dilación de buena fe en el pago de la contribución estuvo justificada. Se dijo por la corte:

"La ley, en situaciones como ésta, no puede exigir o demandar del contribuyente la libra de carne, sino que reconoce la conducta y acción de buena fe como remedio contra tal demanda."

La corte finalmente llegó a la conclusión de que de acuerdo con las circunstancias, la corte inferior había resuelto correctamente que la contribuyente no era responsable del pago de la penalidad al desestimar la petición.

A nuestro juicio, las circunstancias descritas en la demanda demuestran la buena fe de la demandante hasta la fecha anteriormente indicada. Que su duda al efecto de que

el artículo 62 no era aplicable a las ventas de aceite combustible no era caprichosa ni arbitraria, lo demuestra no sólo la opinión del Tesorero, mantenida por diez años, si que también el hecho de que la Corte de Distrito de San Juan así interpretó la ley, que uno de los Jueces de este Tribunal disintió, y por último que al llegar el caso a la Corte Suprema de los Estados Unidos dos de sus Jueces disintieron de la opinión a virtud de la cual se confirmó la sentencia de la Corte de Circuito de Apelaciones. Véase la monografía titulada "Dudas acerca de la responsabilidad por, o acerca de la persona a quien deba pagarse la contribución, en cuanto afecta la responsabilidad por penalidades e intereses", que aparece en 137 A.L.R. 306.

Considerando que la demandante pudo y debió en 1935 pagar la contribución bajo protesta y no lo hizo, procede imponerle la penalidad, pero limitándola al 10 por ciento de la cantidad adeudada por concepto de la contribución propiamente dicha, más intereses sobre el montante de dicha contribución a razón del 1 por ciento mensual desde la fecha antes indicada del año 1935.

Ahora bien, como se dice en *People* v. *Texas Co.* (Colo. 1929) 275 Pac. 896, 902, en materia de penalidad por no pagar una contribución dentro del término que fija la ley, cada caso debe resolverse por sus propios méritos, teniendo en cuenta sus peculiares circunstancias, y no debe servir de precedente para otros a menos que concurran las mismas circunstancias.

Lo dicho nos lleva a la conclusión de que la resolución de la corte inferior es errónea en cuanto ordenó la eliminación de los párrafos tercero, cuarto y séptimo de la demanda, por ser las alegaciones contenidas en dichos párrafos demostrativas de las razones que impiden al demandado imponer a la demandante toda la penalidad, es decir, el pago del 10 por ciento del montante de la contribución más intereses a razón del 1 por ciento desde 1925 hasta la fecha en

que se paguen dichos intereses; y que actuó correctamente la corte sentenciadora al ordenar la eliminación de la parte transcrita del párrafo duodécimo, por ser una alegación de derecho, siendo innecesaria tal alegación toda vez que la corte toma conocimiento judicial de la ley; y por último que fué también correcta la resolución de la corte en cuanto ordenó la eliminación de los incisos marcados (a), (b), (c), (d), (e), (f) y (g) del párrafo décimotercero de la demanda, toda vez que dichas alegaciones constituyen materia argumentativa propia para un alegato pero impropia para ser expuesta en una demanda.

*Por todo lo expuesto procede revocar la sentencia apelada que declaró sin lugar la demanda, y devolver el caso a la corte inferior con instrucciones de que se conceda un término razonable a la parte demandante para que enmiende su demanda eliminando los particulares a que hacemos referencia, y continúe entonces la tramitación de este pleito en forma no inconsistente con los principios expuestos en esta opinión.*