## ˙ No. 12,185.

## The People *v.* The Texas Company.

Decided February 27, 1929.

Mr. William L. Boatright, Attorney General, Mr. Oliver Dean, Assistant, for the people.

Mr. Edward M. Freeman, Mr. Paul P. Prosser, for defendant in error.

*En Banc.*

Mr. Justice Adams delivered the opinion of the court.

The state of Colorado, by the Attorney General, brought action against the Texas Company, a Delaware corporation, to recover a balance claimed for a statutory excise tax at the rate of three cents per gallon, on gasoline sold, offered for sale and used by defendant during the month of May, 1927, in this state. Also for a penalty in double the amount of the balance of the excise tax; the penalty is claimed for failure to pay such tax within the time prescribed by law. The action further seeks to recover an inspection fee of one-tenth of one cent a gallon on gasoline and kerosene which defendant offered for sale and used for consumption for illuminating, heating and power purposes in this state in the month of May, 1927, all of which was inspected by the State Inspector of Oils of this state. After the pleadings were settled,

the case was tried on a stipulation of facts. Judgment was for the defendant company, and the state brings error.

The company paid the tax on gasoline actually sold and used during the month of May, 1927, and makes no question as to that, but objects to the payment of a tax on gasoline "offered for sale." It is the contention of the company that no tax is due until the gasoline is actually sold or used, and that in the sense of the statute, the words "offered for sale" mean "sold or used."

1. The case calls for the interpretation of certain portions of chapter 140, Session Laws 1927. The act is entitled, "An Act Relating to a Tax on Petroleum Products Used in Propelling Motor Vehicles and to Amend Chapter 153 Session Laws of Colorado, 1923." The 1923 act amended chapter 168, Session Laws 1919. The several acts relate to the same subject matter, as stated in the title quoted. The amendments raised the tax, finally to three cents per gallon.

The portions of the 1927 act that are involved are as follows:

"Section 1. * * * The term 'person' means and includes * * * corporation. * * * The term 'distributor' means and includes any person who produces, refines, manufactures, blends or compounds gasoline and sells the same within this state, or any person who sells or who imports, or causes to be imported, and sells gasoline in this state.

"The term 'gasoline' shall mean and include gasoline, benzol, Liberty fuel and such other volatile and inflammable petroleum products, sold or used for the purpose of propelling motor vehicles, except the products commonly known as kerosene and distillates.

"Section 3. Each and every distributor shall, not later than the 25th day of each calendar month, beginning with the second calendar month after this act has become effective, render a true statement to the State Inspector of Oils, and a duplicate copy to the Highway Depart-

ment, duly signed and sworn to, of all gasoline sold, offered for sale or used by him, or them, in this state during the preceding calendar month, and accompany such statement with the payment of an excise tax of three cents per gallon on all gasoline as shown by such statement to have been sold, offered for sale, or used by such distributor. Such statement shall not include any gasoline purchased from distributors in this state upon which taxes shall have been paid by such distributor. Provided that the tax provided for by this act when paid on any gasoline used for a purpose other than the propelling of motor vehicles on public streets or highways shall be refunded by the State Treasurer to the user thereof on application within sixty days after the purchase thereof, supported by affidavit, and accompanied by the original invoice for said gasoline, and filed with and approved by the State Inspector of Oils; said application to be made on forms approved and furnished by the State Inspector of Oils. Provided, further, that no tax shall be paid by such distributor on any gasoline moving in, or sales of gasoline constituting, interstate or foreign commerce.

"Section 4. Any distributor who shall fail to render the statement provided for in section 3 of this act, at the time and as required therein, or who shall fail to pay any tax due from him at the time and as provided by section 3 of this act, shall not have the right thereafter to continue in business as such distributor until such statements as required by this act are furnished and the taxes due thereunder are paid and as a penalty for failure to pay such taxes, he shall be liable double the amount thereof, and thereupon the Attorney General of this state shall institute an action on behalf of the state against such delinquent distributor to recover double the amount of such tax and in such suit an injunction may be issued restraining such distributor from continuing in business as such distributor, such injunction to issue without bond on the part of the state."

The fundamental rule that we have used in the construction of the above statute is to ascertain the intention of the legislature, and to this end to give effect to every word, clause and section, if it can be done. *Paxson v. Cresson Mining & Milling Co.,* 56 Colo. 206, 212, 139 Pac. 531; *Campbell v. People,* 78 Colo. 131, 239 Pac. 879; *People v. Morgan,* 79 Colo. 504, 246 Pac. 1024; 2 Lewis Suth. Statutory Construction (2d Ed.) § 380; 36 Cyc. 1128, 1129; 33 C. J. 284, § 25. Words will be taken in their usual and ordinary meaning. *Commissioners of Eagle County v. People,* 61 Colo. 1, 5, 155 Pac. 321.

2. We find no lack of harmony anywhere in the above act in any particular that has been pointed out to us. We are unable to agree with the learned trial court or with counsel for the company that the excise tax does not apply to gasoline offered for sale. We have held before that it does. *Miller v. People,* 76 Colo. 157, 230 Pac. 603; *Riverside Ice & Storage Co. v. People,* 72 Colo. 266, 210 Pac. 1118; *Riverside Ice & Storage Co. v. People,* 72 Colo. 267, 210 Pac. 1118. We have held also that the excise tax is applicable to gasoline sold and used. *Miller v. People, supra; Altitude Oil Co. v. People,* 70 Colo. 452, 202 Pac. 180. We reaffirm all of the above holdings.

Counsel for the company rely on *Altitude Oil Co. v. People, supra,* as authority for their proposition that the tax cannot be imposed on gasoline offered for sale, but we did not so decide. As we have often said, every opinion must be read in the light of its own facts, and it is decisive only of the matters involved. In the Altitude Oil Company case, supra, the state did not seek to recover the excise tax on petroleum products offered for sale, but sought and obtained judgment under the above 1919 act, only for such products as had been actually sold and used. In the two Riverside cases, supra, the main contention was on the "offer" feature, but gasoline offered for sale was held subject to the excise tax. The question is further elucidated and wholly set at rest in *Miller v. People, supra,* decided in 1924, opinion by Mr.

Justice Campbell. It involved six consolidated actions. On page 158 of the opinion it is stated that the object was to recover the tax "on all such products by them 'offered for sale, or used for consumption for power purposes in propelling motor vehicles.' " And on page 159: "Here the tax, as the Attorney General claims, is imposed on one who sells or 'offers to sell' or uses." Further, on page 161: "The one who first receives the product in this state, which he sells or offers, or holds himself out ready, to sell to a consumer, is prima facie liable for the amount of the tax upon the number of gallons so received." The difference between an offer and a completed sale is a matter of such general knowledge to every clerk who sells goods across the counter and to all who deal in the marts of the world, that it requires no exposition here. It will be found treated in every text book on the law of contracts, and the able brief of counsel for the company contains no inducement for us to reverse our former decisions. It is true, as said in the Miller case, supra, that the seller may require reimbursement from the buyer, but the tax is on the distributor, and reimbursement is not a condition to the collection of the tax. If it were, the state might never recover its revenue. This matter is fully explained on pages 159 and 160 of the Miller decision.

3. Counsel for the company argue that the identical gasoline or petroleum product on which an excise tax has been paid when offered for sale, if the Attorney General's theory be adopted, will or may be subject to a successive like tax on the same article when sold or used, and, a fortiori, that it will thus contravene constitutional provisions against double taxation. They cite authorities against such double taxation as follows: *County Commissioners v. Wilson,* 15 Colo. 90, 24 Pac. 563; *Leonard v. Reed,* 46 Colo. 307, 314, 104 Pac. 410, 133 Am. St. Rep. 77; *State v. Sunburst Refining Co.,* 73 Mont. 68, 235 Pac. 428. The difficulty with the argument of counsel for the company does not lie in any lack of excellence in the well

known rule against double taxation, but rather in its aloofness from any point at issue. We remark with emphasis that we do not hold and we have never held that the identical gasoline or commodity, on which an excise tax has been paid when offered for sale, is or will be subject to the imposition of a further like tax when sold or used. We hold to the contrary. The Attorney General does not dispute with counsel for the company against a double excise tax. The petition or complaint of the state is to recover the excise tax of three cents per gallon once only; i. e., on 1,501,269.5 gallons of gasoline *sold, offered for sale and used* by the company in this state during the month of May, 1927, amounting to $45,038.09, less $30,118.16 paid, leaving a balance due of $14,919.93. The unwarranted multiple, which would swell these figures to 3,002,539 gallons, with an excise tax of $90,076.16 for May, 1927, is supplied alone by imagination, and wholly outside the record. But counsel for the company cite *Brown v. City of Denver,* 7 Colo. 305, 312, 3 Pac. 455, and *State v. Sunburst Refining Co., supra,* on the proposition that the constitutionality of a statute ''is to be tested, not what has been done under it, but what it authorizes to be done under its provisions.'' But there is no such authorization in the 1927 act of the Legislature, nor the slightest hint thereat, either in the creation of the tax, or in the provisions for its enforcement. The whole purpose of the act is quite to the contrary. It will not be presumed that the Legislature acted unlawfully. Its good faith will be presumed. *People v. Morgan, supra; Minnesota v. Barber,* 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455; *New Mexico, etc. v. Denver & Rio Grande R. R. Co.,* 203 U. S. 38, 55, 27 Sup. Ct. 1, 51 L. Ed. 78. Just as the law of the land is written into every contract, so the Constitution is written into every legislative act, and wholly supposititious conditions, neither expressed nor implied, nor capable of enforcement, cannot be manufactured in workshops outside legislative halls, and fastened on the legislative mind, for the ulterior purpose of defeating a valid excise

tax, nor to render a constitutional act unconstitutional. Legislative mental reservations, if there be any such, are things that no one need ever fear, for they can never be effective unless and until they are crystallized into statutes. Furthermore, we must disagree with the false logic that because an excise tax cannot be collected twice on gasoline offered for sale, that therefore it cannot be collected at all. It would be as rational to say that one should not be required to pay one's bill at the store because of a morbid fear that the merchant would attempt to collect it again. We are also of the opinion that the distributor cannot usurp the prerogative of the state in determining the time, manner or place of the ascertainment of the tax due, or the payment thereof, when the legislation does not violate any constitutional provision either of the state or nation. There is no such objection to the 1927 act.

4. Counsel for the company are disposed to make capital of the word "used," which appears in the title of the act as well as the body thereof. They speak of it from the standpoint of past tense. However, the word is similarly employed in the 1919 act, which we declared valid, but be that as it may, if counsel are right, then by argument equally fallacious, it might be claimed that it pertains only to gasoline actually used before the very act was passed. A narrow construction that would lead to such an absurdity cannot be indulged. The gasoline is designed for use and when offered for sale the prima facie presumption is that it is or will be used; otherwise the company ought never to offer it.

5. As we view it, the problems suggested by counsel for the company lie not so much in constitutional questions, but rather in supposed difficulties in the manner of the enforcement of the law, and in the periodical ascertainment of the quantity of gasoline offered for sale. The Attorney General, however, contends, and not without reason, that the solution is simplified by the determination of the quantity in the company's storage tanks,

where it is placed after having been unloaded from the cars in Colorado, designed for domestic consumption, and from such tanks distributed to the local trade in parcels and containers other than those in which such gasoline was shipped here by the company. Some of such gasoline is sold to local farmers who bring their own barrels or cans with them, to be filled from the company's storage tanks. Some of it is used by the company in its own business. Some of it is sold to other retail dealers. Most of it is loaded on tank wagons and is subsequently transported to local filling stations, either the company's or those of other dealers, and there sold to the ultimate consumer for automobile purposes. Even when the gasoline is in the automobilist's car, perhaps it may be said to be actually used for the first time only when burned in his engine, but even the company does not go this far in its construction of the law. They contend that it should be measured, in the main, on actual sales at the filling stations. We think they are wrong, for the reasons given. We agree with the Attorney General that such measurements may be at the company's storage tanks in Colorado. The fact that it is actually sold there creates a presumption of an implied offer of sale. The circumstance that it is advertised more extensively for sale at filling stations is only an incident, and a matter of convenience to the public. The fractional parts sold to farmers or others is not important. The criterion is the total quantity. It appears to be most easily ascertainable at such storage tanks, rather than when remotely scattered over the state. Accuracy might easily be dependent on innumerable filling station attendants, their reports to their superiors, and require the services of an army of state inspectors, unless the commonwealth be forced to rely solely on the statement of the distributor. There is no such contemplation in the law. Obviously, it is not feasible to recount here all of the arguments either for or against the contention here discussed. Rigidly, the company cannot be required to pay the same

tax twice, and interstate commerce shall not be interfered with, and it is not. As we view it, the Act of 1927, and the manner and possibilities of its lawful enforcement, are strictly confined to the domestic affairs of the state. If it were otherwise, we should not hesitate to declare it invalid, in our observance of the federal Constitution, just as we have done when there was a violation thereof. *People v. Morgan, supra.*

6. Further as to measurements of the gasoline offered for sale: We should be loath, indeed, to cast so serious a reflection on the abilities of either the company's officers or employees, or of the state inspector of oils, as to declare a lack of confidence in their power to measure any number of gallons of gasoline offered for sale by the company. We are sure that they can do it, and that if there are errors, they will be slight, unintentional and inconsequential. The fear of the company that it may be taxed twice on gasoline that may be carried over to another month after having been once measured and reported, is groundless. We cannot conceive that problems in subtraction, when or if required to avoid duplications, will present any insurmountable problem to the company or to the enforcement officers of the state. Counsel for the company have answered their own argument as to dangers of duplicate taxation in a separate chapter of their brief entitled, ''State must rely largely on distributor's books and records.'' This is no doubt true to a great extent, just as it is true with reference to almost any tax, even though subject to governmental inspection, as here. The pertinency of such reference at this place is that there is no presumption that the company will pad its books or records either for or against itself, to evade a tax, or to pay more than it should, or that the company or state officials will act without intelligence or honesty. As we said in *Mountain States Beet Growers' Ass'n v. Monroe,* 84 Colo. 300, at page 316, 269 Pac. 886, '' 'A court will not presume a state of facts injurious to fair dealing and common honesty.' 10 R. C. L. 883, and cases

there cited." We are always happy to indulge the legal presumption of the fairness and honesty of men. Our confidence has not been abused by the parties to this record, nor by anything found in the 1927 act. It is a lawful exercise of the police power of the state.

7. In *Altitude Oil Co. v. People, supra,* we held that the "due process" and "equal protection" clauses of the Fourteenth Amendment to the Constitution were not violated by the 1919 act. We so held on the authority of *Bowman v. Continental Oil Co.,* 256 U. S. 642, 65 L. Ed. 1139, 41 Sup. Ct. Rep. 606. This ruling was supplemented and confirmed by the subsequent Riverside and Miller cases above referred to. So far as any question of constitutionality is concerned, the 1927 act is a counterpart of the 1919 act, and the same ruling applies here. There is another good reason why the speculations of counsel for the company on constitutional questions are largely academic. The company paid, without protest, the tax on gasoline actually sold, and admits its liability thereunder. In the absence of double taxation, is there any less power in the state to tax the right to offer for sale, than to tax the right to sell or use? If not, they must both fall into the same category of valid legislation. We regard them as on a parity in this respect. Courts do not control the discretionary powers of legislatures, validly exercised. The difficulties supposed are not judicial, nor legislative, but largely administrative, as we have pointed out, but these are difficulties that may be said to be inherent under any construction of the law, by reason of the nature of the commodity and its widespread use. It is also, as we regard it, less difficult of enforcement and more consonant with the purpose of the act to give it the interpretation that we have applied. And on constitutional matters, we advert to the Beet Growers' case, supra, wherein we cited a large number of authorities, quoting a United States Supreme Court opinion by Mr. Chief Justice Taft, also another federal case, and also repeated decisions of this court, against inject-

ing constitutional questions into a case when not necessary to the decision.

8. As to interstate commerce: In *Bowman v. Continental Oil Co., supra,* the court says (256 U. S. 642, 648): "No doubt the state might impose a license tax upon the distribution and sale of gasoline in domestic commerce if it did not make its payment a condition of carrying on interstate or foreign commerce. But the state [New Mexico] has not done this by any act of legislation." In Colorado, however, the Legislature has not only refrained from making the payment of the excise tax in question a condition of carrying on interstate commerce, but it is expressly declared in the concluding sentence of section 4, chapter 140, of the 1927 laws: "Provided, further, that no tax shall be paid by such distributor on any gasoline moving in, or sales of gasoline constituting, interstate * * * commerce." There is nothing either in the act itself or in the manner of its enforcement to give countenance to the assertion of company's counsel that it interferes with interstate commerce. The commerce is wholly intrastate.

9. We have held, above, that the tax accrued at the time that it was put in the company's bulk storage plants; that it was there offered for sale. Counsel for the company argue that this will cause them to pay for gasoline that may be lost by evaporation or otherwise, but we hold that as to this excise tax, like a property tax, it is no objection to the assessment as of a given date that the property since then has ceased to exist. This is a fundamental principle in the law of taxation. *Shelby County v. Mississippi & T. R. Co.,* 16 Lea (Tenn.) 401, 1 S. W. 32; Cooley on Taxation (4th Ed.), section 446 and page 2141 and notes. It is sufficient to add that the construction contended for by counsel for the company would defeat the right of the state on the full quota of gasoline offered for sale.

10. The inspection fee claimed by the state was based on section 3623, C. L. 1921, but the Attorney

General concedes that this section was expressly repealed by section 9, chapter 140, p. 535, 1927 Laws. We have so held. *People v. City and County of Denver,* 84 Colo. 576, 272 Pac. 629. The judgment of the district court in sustaining the demurrer to this part of plaintiff's complaint was right. The case last cited, opinion by Mr. Chief Justice Denison, should be added to the list of our decisions in the above second paragraph of this opinion. It was there held that even municipalities are subject to the tax. We repeat that which was there said: "It is not a tax on the gasoline, but on the right to sell it, offer it for sale or use it to propel motor vehicles." See cases there cited.

11. No tax can be levied on gasoline sold to the United States. *Panhandle Oil Co. v. State of Miss.,* 277 U. S. 218, 48 Sup. Ct. Rep. 451, 72 L. Ed. 857, 56 A. L. R. 583.

12. Concerning the penalty, or double liability referred to in section 4, chapter 140, act of 1927, above quoted: We cannot, without doing violence to our convictions, hold such penalty to be unlawful. We regard it as a valid exercise of the police power, and one often necessary to enforce compliance with the law. To hold it invalid would be unjustifiable. It might easily handicap the state officers in the performance of their duties, by permitting dilatory compliance with the law on the part of those affected, if it might not, indeed, even lead to failure in exacting compliance at all. We are constrained, however, under the facts of the record, all of which it is unnecessary to recite, to agree with the trial court in this instance not to enforce such penalty. The Attorney General himself, in suing for the inspection fee, misconstrued the law and demanded more than was due, though he acted wholly in good faith. He subsequently withdrew the claim for such inspection fee, after the publication of our opinion in *People v. Denver, supra.* This case concerns a problem in taxation, and was tried on an agreed statement of facts, without evasion. The misapprehension of counsel for the company as to the meaning

of our opinion in *Altitude Oil Co. v. People, supra,* was shared by the learned trial judge. Each case must be decided on its own merits, and our determination against the penalty now is not to be construed as a precedent under different facts. Instances of the abatement of the penalty under meritorious conditions will be found in *Litchfield v. County of Webster,* 101 U. S. 773, 25 L. Ed. 925; *U. S. Trust Co. v. New Mexico,* 183 U. S. 535, 46 L. Ed. 925; *Cottle v. Union Pac. R. R. Co.* (C. C. A. 8th Ct.), 201 Fed. 39.

13. It is claimed that the judgment should be affirmed because the tax has been fully paid. If this were the fact concerning such tax, we should affirm the judgment, even though the trial court had come to its conclusion upon a theory to which we do not agree, but we think it not strictly correct, due to the fact that a less amount was ascertained because the measurements were not made as here indicated. This is purely a matter of accountancy, for the further determination of the trial court, on the basis outlined in this opinion.

The diligence of counsel for the company and the state has resulted in the collation of a vast number of authorities not cited here. They have been of great assistance to us, but to quote from each, or to point out the disparity of some of them in their inapplication to the matter before us, would unduly cumber our reports. We must therefore omit them.

The judgment is reversed, and the cause remanded, with directions for further proceedings not inconsistent with this opinion.