**The PEOPLE of the State of Colorado, Plaintiff**

v.

**Eugene SUMMERS, Defendant.**

**No. 08SA169.**

Supreme Court of Colorado, En Banc.

May 26, 2009.

Mitchell R. Morrissey, District Attorney, Second Judicial District, Robert J. Whitley, Chief Appellate Deputy District Attorney, Denver, Colorado, Attorneys for Plaintiff.

Haddon, Morgan, Mueller, Jordan, Mackey & Foreman, P.C., Norman R. Mueller, Rachel A. Bellis, Denver, Colorado, Attorneys for Defendant.

Justice RICE delivered the Opinion of the Court.

This original proceeding arises out of the defendant's motion to dismiss the sexual assault on a child charges against him because they are time barred. The defendant contends that the ten-year statute of limitations in effect when he allegedly committed the crimes mandates dismissal of charges brought more than ten years after the last alleged incident. The People counter that the General Assembly's amendment of the statute of limitations for sexual assault on a child, extending it to ten years after the victim reaches the age of eighteen, was intended to apply retroactively and therefore applies to the charges in this case. The trial court agreed with the People, concluding that the extended statute of limitations applied to the defendant, and denied his motion to dismiss. We issued a rule to show cause and now make that rule absolute, holding that because we are unable to discern the legislative intent behind the amendments to the statute of limitations, we must apply the rule of lenity to bar the charges under the ten-year statute of limitations in effect when the crimes were allegedly committed. We also overrule the court of appeals' recent decision in *People v. Boston*, —— P.3d ——, No.

07CR2186, 2009 WL 400073 (Colo.App. Feb. 19, 2009).

## I. Facts and Procedural History

The defendant, Eugene Summers, was charged with thirty-two counts of sexual assault on a child, sexual assault on a child by one in a position of trust, sexual assault on a child—pattern of abuse, and criminal attempt to commit sexual assault on a child. The acts were allegedly committed during two separate time periods—one period from August 1, 1992, to August 31, 1993, and one period from August 1, 1995, to June 30, 1996. The felony complaint charging Summers with these crimes was filed April 6, 2007. Summers moved to dismiss the charges against him, contending that they were all barred by the statute of limitations. The statute of limitations in effect at the time of the alleged crimes was ten years. However, the General Assembly amended the statute of limitations in 2002, tolling the ten-year statute of limitations for sexual assault on a child until the child victim reaches the age of eighteen. The trial court denied Summers' motion to dismiss, holding that the newly amended statute of limitations applied to Summers' case and that it had not yet run.[1]

## II. Analysis

We are asked in this case to determine which statute of limitations applies to the sexual assault on a child charges brought against Summers. Because the plain language of the statute is ambiguous and we are unable to determine any clear intent expressed by the legislature, we hold that the rule of lenity applies and the ten-year statute of limitations in effect at the time of the alleged acts bars the charges against Summers.

### A. Ambiguity in Plain Language

 The amendments to the statute of limitations for sexual assault on a child were introduced as House Bill 02–1396, which was later enacted as § 18-3-411, C.R.S. (2002). In determining how to apply H.B. 02–1396,

---

1. The victim in this case was born December 19, 1981, and turned eighteen December 19, 1999. If the 2002 amendments apply in this case, the statute of limitations does not bar charges until December 19, 2009.

we begin with the plain language of the statute. *Frazier v. People,* 90 P.3d 807, 810 (Colo.2004). If the language is unambiguous, we look no further and apply the words as written. *Slack v. Farmers Insurance Exchange,* 5 P.3d 280, 284 (Colo.2000). If, however, there is ambiguity on the face of the statute, our task is to discern the legislative intent behind the law. *Frazier,* 90 P.3d at 810. In construing statutory language, we read the statute as a whole, with a goal of giving "consistent, harmonious, and sensible effect to all its parts." *People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986).

For purposes of determining the statute of limitations that applies to Summers' alleged crimes, two sentences contained in section 18–3–411 are relevant. The first is contained in subsection (2)(b) and reads, "The ten-year statute of limitations shall apply to all felony offenses specified in subsection (1) of this section which are alleged to have occurred on or after July 1, 1992." § 18–3–411(2)(b), C.R.S. (2002). The second appears in section 18–3–411(5) as published in the Colorado Session Laws and reads, "Except as otherwise provided in subsection (2) of this section, this act shall take effect upon passage, and shall apply to offenses committed on or after said date." Ch. 288, sec. 5, § 18–3–411, 2002 Colo. Sess. Laws 1127, 1130.

These two sentences are in direct conflict with one another. The first mandates that the new eighteen-plus-ten statute of limitations be retroactively applied to all crimes for which the ten-year statute of limitations had not yet run when the new law was enacted, including the crimes at issue in this case. If that language is applied, the charges against Summers are not time barred, and he can be tried on the charges. However, the second sentence mandates that the new statute of limitations applies only to crimes committed on or after its effective date of June 3, 2002, implying that the previously existing flat ten-year statute of limitations be applied to all crimes committed before that date. If this language is applied, the flat ten-year statute of limitations applies in this case, and the charges against Summers are time barred. Reading the statute as a whole, it is impossible to give meaning to both of these provi-

sions. We must therefore determine which one controls by inquiring into the legislative intent behind the language used.

## B. Legislative Intent

 Because we are unable to apply the plain language of the statute, we turn to an analysis of the legislature's intent in enacting the statute. When an ambiguity appears on the face of a statute, "we may rely on other factors such as legislative history, the consequences of a given construction and the goal of the statutory scheme to determine a statute's meaning." *Frazier,* 90 P.3d at 811. In doing so, we are mindful that "[a] statute should not be construed in a manner which defeats the obvious legislative intent." *Tacorante v. People,* 624 P.2d 1324, 1330 (Colo. 1981).

### 1. Legislative History

The confusion in this case arises out of a poorly drafted statute—the substantive provisions of the statute indicate that the statute is to apply retroactively, but the effective date clause explicitly states that the statute applies to crimes committed on or after the statute's effective date. In order to understand the conflicting provisions of the law, it is important to consider how the statute was amended.

Prior to the 2002 legislative session, the statute of limitations for sexual assault on a child in Colorado was ten years from the date of the last occurrence of the crime. The statute of limitations at the time read:

No person shall be prosecuted, tried, or punished for an unlawful sexual offense other than the misdemeanor offenses specified in sections 18–3–402 and 18–3–404, unless the indictment, information, complaint, or action for the same is found or instituted within ten years after commission of the offense.... The ten-year statute of limitations shall apply to all offenses specified in subsection (1) of this section [including the offenses with which the defendant is charged in this case] which are

alleged to have occurred on or after July 1, 1979.

§ 18–3–411(2), C.R.S. (2001).

■ The General Assembly amended the law in 2002 to toll the ten-year statute of limitations for sexual assault on a child until the child victim reaches the age of eighteen. The substantive amendments indicated that the new statute of limitations was intended to reach back and apply to crimes committed on or after July 1, 1992. The amended statute of limitations provided:

> No person shall be prosecuted, tried, or punished for an unlawful sexual offense charged as a felony unless the indictment, information, complaint, or action for the same is found or instituted within ten years after the victim reaches the age of eighteen years. The ten-year statute of limitations shall apply to all felony offenses specified in subsection (1) of this section [including the offenses with which the defendant is charged in this case] *which are alleged to have occurred on or after July 1, 1992.*

§ 18–3–411(2)(b), C.R.S. (2002) (emphasis added). When H.B. 02–1396 was initially proposed,[2] it contained a no-appropriations clause.[3] Section 3 of the original version of the bill read:

> The general assembly hereby finds that the amendments to sections 16–5–401 and 18–3–411, Colorado Revised Statutes, enacted in this act will result in the minor fiscal impact of one additional offender being convicted and sentenced to the department of corrections during the five years following the passage of the act. Because of the relative insignificance of this degree of fiscal impact, these amendments constitute an exception to the five-year appropriation requirement specified in section 2–2–703, Colorado Revised Statutes.

H.B. 1396, 63rd Gen. Assem., 2d Reg. Sess. (Colo.2002).

This version of the bill resulted from the Colorado Legislative Council Staff's State and Local Fiscal Impact Report, which analyzed the financial impact of the change in the statute of limitations, and predicted an increase of one offender admitted to the Department of Corrections every five years. Finding an increase of one offender every five years to be minimal, the House attempted to exempt the bill from the requirement that the bill's costs be appropriated in the bill itself.

In addition, section 4 of the bill provided for a retroactive effective date: "Section 4. Effective date—applicability. This act shall take effect July 1, 2002, and *shall apply to offenses committed on or after July 1, 1992.*" *Id.* (emphasis added). This effective date was consistent with section 2 of the bill, which indicated that the new eighteen-plus-ten statute of limitations should apply to crimes committed on or after July 1, 1992.

H.B. 02–1396 was then reviewed by the Joint Budget Committee (JBC) staff. The JBC staff prepared a Fiscal Analysis Report and presented it to the Senate Appropriations Committee. The JBC staff expressed its concern regarding several sentencing bills that had been introduced during the session and contained no-appropriations clauses indicating that the fiscal impact would only be a one-offender increase. The Report noted that if each of these bills were exempted from the five-year appropriation requirement, the Department of Corrections would be severely underfunded. The JBC staff therefore prepared an amendment for H.B. 02–1396 which transferred funds in order to cover the increased costs resulting from the bill. Sections 3 and 4 of the bill were changed to represent the transfer of funds.

---

**2.** It is appropriate for us to consider successive drafts of legislation in discerning the legislative intent behind a statute. *See* Singer & Singer, *Sutherland Statutory Construction* 558–59 (7th ed.2007).

**3.** Colorado law requires that all bills "which would result in a net increase in periods of imprisonment in state correctional facilities" contain "an appropriation of moneys which is

sufficient to cover any increased capital construction costs and any increased operating costs which are the result of such bill in each of the first five years in which there is a fiscal impact as a result of the bill." § 2–2–703, C.R.S. (2008). In order to attempt to exempt a bill from this requirement, the General Assembly must make such intent explicit in the text of the bill with a no-appropriations clause. *See id.*

Section 5 became the new effective date clause of the bill, and it read, "Except as otherwise provided in subsection (2) of this section, this act shall take effect upon passage, and *shall apply to offenses committed on or after said date.*" Ch. 288, sec. 5, 18–3–411, 2002 Colo. Sess. Laws 1127, 1130 (emphasis added). Subsection 2 of that section made the act's effectiveness contingent upon another bill's passage and allocation of appropriate funds.

The amended version of H.B. 02–1396, which contained section 2, purporting to apply the new statute of limitations to crimes committed on or after July 1, 1992, and section 4, purporting to apply the entire bill to crimes committed on or after its passage date, was passed by the General Assembly and signed into law by the Governor on June 3, 2002.

Our review of the legislative history behind H.B. 02–1396 fails to clarify the legislative intent behind the bill. It is clear that the bill as initially introduced was intended to apply the new eighteen-plus-ten statute of limitations to crimes committed in the past for which the statute of limitations had not yet run. However, the original version of the bill was not enacted. The legislature, for one reason or another, changed the effective date clause to indicate that the new statute of limitations should only apply to crimes committed on or after its effective date. We must not disregard this language when determining the legislature's intent, as the words used in a statute are the best indicator of legislative intent. *People v. Dist. Court,* 713 P.2d at 921.

Moreover, the addition of an appropriations clause allocating funds from 2002 to 2007 suggests that the statute was intended to apply retroactively. It could be argued that there would be no need to appropriate additional funds to cover the first five years of the amended statute's enforcement unless the legislature intended for the new statute

of limitations to reach back and cover crimes already committed.[4] This view would carry more weight if not for the fact that at the very point at which the legislature added the appropriations clause, it also amended the effective date clause to make the statute apply prospectively. We are not persuaded, therefore, that the addition of the appropriations clause clearly indicates that the legislature intended for the statute to apply retroactively.

Additionally, the legislative history might also be interpreted to mean that the change in the effective date clause was simply an unintended drafting error creating an undesirable loophole in the statute of limitations. Even if that were the case, hardships created by statutory language are matters for legislative action; this court is not permitted to rewrite the law in order to avoid an unpopular result. *See Busby v. Camp,* 16 Colo. 38, 39, 26 P. 326, 326 (1891).

In short, the legislative history of H.B. 02–1396 leaves us with no clear indication of whether the General Assembly intended for the eighteen-plus-ten statute of limitations to apply retroactively or prospectively.

### 2. Presumption of Prospective Application

Because our review of H.B. 02–1396's legislative history fails to reveal the legislative intent behind the bill, we turn to other aids of statutory construction. *See Tacorante,* 624 P.2d at 1330 ("The general canons of statutory construction may be applied to determine the correct effective date of a statute."). One such aid in Colorado is the presumption that statutes apply prospectively. § 2–4–202, C.R.S. (2008). The General Assembly may override this presumption by clearly expressing a contrary intent. *Riley v. People,* 828 P.2d 254, 257 (Colo.1992). While there is no requirement "that express language of retroactive application" be used

---

4. If the statute applied prospectively only, there would be no fiscal impact within the first five years after its enactment. Any crimes committed on or after the statute's effective date would necessarily already be covered by the flat ten-year statute of limitations already in effect. There would therefore be no fiscal impact until

ten years after the statute went into effect, when charges previously barred could be brought pursuant to the new eighteen-plus-ten statute of limitations. Nonetheless, the appropriations clause appropriates funds for the years 2002 through 2007, the first five years in which the statute was effective.

to convey that intent, *Ficarra v. Dep't of Regulatory Agencies, Div. of Ins.*, 849 P.2d 6, 14 (Colo.1993), the first place we look in determining the legislature's intent is the language used in the statute. *See Spahmer v. Gullette,* 113 P.3d 158, 162 (Colo.2005).

■ The presumption of prospective application is only strengthened by the insertion of an effective date clause that explicitly mandates prospective application. It is well established in Colorado that when the General Assembly indicates in an effective date clause that a statute shall apply prospectively, courts are bound by that language. *See People v. McCoy,* 764 P.2d 1171, 1174 (Colo. 1988) (applying statute prospectively where effective date clause stated that amendments "shall apply to acts committed on or after" its effective date of July 1, 1985); *People v. Macias,* 631 P.2d 584, 587 (Colo.1981) (applying statute prospectively where effective date clause read, "This Act shall take effect July 1, 1979, and shall apply to offenses committed on or after said date"); *People v. Patnode,* 126 P.3d 249, 258 (Colo.App.2005) (applying statute prospectively where effective date clause said the amendment "shall take effect July 1, 1999, and shall apply to offenses committed on or after said date.").

The cases cited above are not directly analogous to this case, as none of the statutes at issue in those cases involved substantive language that conflicted with the prospective effective date clause. Nonetheless, while we cannot "ignore the clear legislative determination that the ... amendments were intended ... to have prospective effect only," as expressed in the effective date clause, *Riley,* 828 P.2d at 257, we are not free to simply disregard the conflicting language in section 2 of the statute. The language of that section appears to indicate an intent to rebut the presumption of prospective application, using explicitly retroactive language. However, the simultaneous use of a prospective effective date clause weakens that rebuttal considerably. As a result of these conflicting provisions, we are unable to use the presumption

of prospective application to discern the legislative intent behind the statute.

### 3. Subsequent Indications of Intent

We have previously recognized the General Assembly's power to make the legislative intent behind a statute clear in a subsequent version of the statute. *See Tacorante,* 624 P.2d at 1329–30 (recognizing that subsequent bill amended the effective date of part of a prior bill); *see also Pinellas County Planning Council v. Smith,* 360 So.2d 371, 372 n. 1 (Fla.1978) (cited with approval in *Tacorante,* 624 P.2d at 1330) (allowing legislature to correct clerical error in effective date clause).

The legislature has exercised this power with a prior version of the very statutory scheme at issue in this case. Before 1982, the statute of limitations for sexual assault on a child was three years. § 16–5–401, C.R.S. (1981). In 1982, the General Assembly amended the statute to extend the statute of limitations to ten years. § 16–5–401, C.R.S. (1982). As originally amended, the statute did not indicate whether it was to apply prospectively to crimes committed on or after its effective date, or whether it was intended to reach back as far as possible to cover crimes committed in the past for which the previous statute of limitations had not yet run. However, realizing its mistake, the General Assembly amended the statute again to add a section indicating the legislature's intent for the new ten-year statute of limitations to apply retroactively.[5] When determining the appropriate statute of limitations to apply to crimes allegedly committed in 1980, this court used that subsequent declaration of legislative intent to hold that the amended ten-year statute of limitations applied. *People v. Holland,* 708 P.2d 119, 120–21 (Colo.1985) ("We conclude that the specific and explicit indication of legislative intent in section 16–5–401.1, is sufficient to overcome the general presumptions [of prospective application of statutes]. . . .").

It has now been seven years since the adoption of the 2002 amendments at issue in

---

**5.** The following section was added to the statute: "The intent of the general assembly in enacting section 16–5–401(6) and (7) in 1982 was to create a ten-year statute of limitations as to offenses specified in said subsections committed on or after July 1, 1979." § 16–5–401.1, C.R.S. (1985).

this case. The legislature has made no attempt to clarify its intent regarding the retroactive or prospective applicability of this statute. In fact, the legislature again amended the law in 2006 to completely eliminate the statute of limitations for sexual assault on a child. *See* § 16–5–401, C.R.S. (2006). In doing so, it clearly indicated its intent for that change to apply retroactively. The substantive amendments to the bill indicate that it is to apply "to sex offenses against children committed on or after July 1, 1996, and to sex offenses against children committed before July 1, 1996, for which the applicable statute of limitations in effect prior to July 1, 2006, has not yet run on July 1, 2006." Ch. 119, sec. 1, § 16–5–401, 2006 Colo. Sess. Laws 410, 411. The effective date clause for the 2006 amendments simply states, "This act shall take effect July 1, 2006," ch. 119, sec. 5, § 16–5–401, 2006 Colo. Sess. Laws 410, 414, with no indication of any legislative intent for the amendments to apply only prospectively.

In sum, we have no attempt by the legislature to clarify its intent behind H.B. 02–1396. We are left with the statute as written, which is contradictory on its face; the legislative history of the statute, which does not compel a particular result; and the presumption of prospective application, which the language of the statute simultaneously enforces and rebuts. Confronted with conflicting language and finding no guidance through the use of statutory construction aids, we are unable to definitively determine whether the General Assembly intended the eighteen-plus-ten statute of limitations to apply retroactively or prospectively.

## C. Rule of Lenity

Because we are unable to apply the plain language of the statute and we are unable to discern the legislature's intent behind the statutory language, we reluctantly turn to the rule of lenity—a rule of last resort invoked only "if after utilizing the various aids of statutory construction, the General Assembly's intent remains obscured." *People v. Thoro Prods. Co.,* 70 P.3d 1188, 1198 (Colo.2003). Under the rule, "ambiguity in the meaning of a criminal statute must be interpreted in favor of the defendant." *Id.* Due to our conclusion that the amended statute of limitation's coverage is ambiguous, the rule of lenity requires that we apply the flat ten-year statute of limitations in effect when the acts allegedly took place. *See Id.* at 1199 ("Based on the rule of lenity, we accordingly construe this ambiguity in favor of the [defendants] and hold that their prosecution is barred by the statute of limitations."). We do not resort to the rule of lenity lightly, but we are mindful that a court should "not attribut[e] to [the legislature], in the enactment of criminal statutes, an intention to punish more severely than the language of its laws clearly imports in the light of pertinent legislative history." *Prince v. United States,* 352 U.S. 322, 329, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). Where, as here, both the statutory language and the legislative history leave us with no way to definitively determine the statute's intended coverage, it is not our place to choose between two competing and viable alternatives in order to usurp the General Assembly's role in making the law. *See United States v. Santos,* —— U.S. ——, ——, 128 S.Ct. 2020, 2025, 170 L.Ed.2d 912 (2008)(plurality opinion)(noting that the rule of lenity "keeps courts away from making criminal law in [the legislature's] stead"). Rather, we have no choice but to apply the rule of lenity in favor of the defendant. As a result, the charges against Summers are time barred and must be dismissed.

## III. *People v. Boston*

The court of appeals recently addressed the issue we resolve here in an opinion announced after certiorari was granted in this case. The court of appeals reached a different conclusion than we reach today, essentially writing the effective date clause out of the statute to find that there was no conflict on the face of the statute and that the eighteen-plus-ten statute of limitations applied retroactively. To the extent that the court of appeals' opinion is inconsistent with ours, it is overruled.

The court provided two lines of reasoning to support its conclusion that the eighteen-plus-ten statute of limitations should apply

retroactively. First, it reasoned that the effective date clause was inserted into H.B. 02–1396 together with a safety clause for two purposes—showing when the act became effective and protecting the bill from the referendum process—and therefore could be ignored when interpreting the bill. *Boston,* —— P.3d at ——, 2009 WL 400073, at *2. Second, it determined that because the effective date clause appears only in the Colorado Session Laws, and not in the Colorado Revised Statutes, it is "not considered to be a part of the official statutes of the state." *Id.* at ——, at *3. We find neither line of reasoning persuasive.

We reject the court of appeals' contention that the General Assembly's alleged intention behind the effective date clause renders the language in that clause meaningless. There is no evidence to show that the only purpose behind the effective date clause was to protect the bill from the referendum process, and the court provided no analysis explaining why it believed that to be the General Assembly's intent. Even if the effective date clause were only inserted to avoid the referendum process, we cannot simply disregard the legislature's indication that the statute was intended to apply prospectively. *See Riley,* 828 P.2d at 257. The court of appeals' decision to essentially ignore the effective date clause based upon the legislature's alleged intent was error.

The court of appeals' second line of reasoning, that anything not appearing in the Colorado Revised Statutes is not officially part of the laws of this state, is likewise erroneous. The court cited section 2–5–118(1)(a) of the Colorado Revised Statutes and *Suncor Energy (USA) v. Aspen Petroleum Prods., Inc.,* 178 P.3d 1263 (Colo.App.2007), to support its conclusion. This reliance is misguided. While the Colorado Revised Statutes are considered the official publication of statutes in Colorado, § 2–5–118(1)(a), C.R.S. (2008), the reviser is required to include references to the Colorado Session Laws to permit the reader to locate the original source of legislation published in the Colorado Revised Statutes. *See* § 2–5–102(a), C.R.S. (2008); *see also People v. Washington,* 969 P.2d 788, 789 (Colo.App.1998). We consistently reference Colorado Session Laws when interpreting statutes. *See, e.g., Kaufman v. People,* 202 P.3d 542, 548 (Colo.2009); *Avalanche Indus., Inc. v. Clark,* 198 P.3d 589, 592 (Colo.2008); *Gallion v. Colo. Dep't of Revenue,* 171 P.3d 217, 221 (Colo.2007). In addition, the Colorado constitution provides that a statute "take[s] effect on the date stated in the act, or, if no date is stated in the act, then on its passage." Colo. Const. art. V, sec. 19. We are not free to simply ignore language which is given meaning by our constitution. The court of appeals erred in reasoning that, because the effective date clause appeared only in the Colorado Session Laws, and not in the Colorado Revised Statutes, it need not be enforced.

Because neither line of reasoning provided by the court of appeals in *Boston* was correct, and because the analysis we conduct today compels a different result, that case is overruled.

## IV. Conclusion

We conclude based on the rule of lenity that the eighteen-plus-ten statute of limitations applies to crimes committed on or after the statute's effective date, as stated in the effective date clause. As a result, the charges against Summers are time barred by the flat ten-year statute of limitations in effect at the time of the alleged acts. We therefore make the rule to show cause absolute and remand for proceedings consist with this opinion.

Justice COATS concurs in the judgment.

Justice EID dissents.

Justice COATS, concurring in the judgment.

Although I too believe the extended limitations period of HB 02–1396 can apply only to offenses committed on or after passage of the act, I do not consider it necessary to rely on a rule of lenity to reach that result. In fact, I believe that result is dictated by the language of the act itself. I therefore concur only in the judgment of the court.

Despite being contingent upon certain general fund savings generated by other legisla-

tion, the effective date of the act is in no way ambiguous. The effective date clause expressly limits the applicability of the entire act to offenses committed on or after the date of its passage. While the substantive statutes amended by HB 02–1396 would extend with equal clarity the limitations period for prosecution of specified sexual offenses, not only for new offenses but for all such offenses for which the existing statute of limitations had not yet run, these conflicting provisions do not render the effective date clause ambiguous.

The legislature has anticipated that it might pass irreconcilable statutes at either the same or different sessions, and in that event it makes clear its intention that the prevailing statute be the one with the later effective date, or in the case of identical effective dates, the statute enacted more recently. *See* § 2–4–206, C.R.S. (2008). Although the legislature has not expressly provided for a conflict between an act's substantive provisions and effective date clause, its preference for recency is clear, and as a simple matter of logic, a particular provision of a legislative enactment cannot apply more broadly than the enactment of which it is a part. Especially where, as here, the particular substantive provision does not directly countermand the act's applicability clause so as to render it completely nugatory, but merely purports to apply itself to an even broader class of cases, I believe the subsequent decision to limit the applicability of the entire enactment necessarily fixes an outer limit on the applicability of any of its parts.

From the legislature's concern for the act's immediate fiscal impact, evident in the contingent construction of the effective date clause itself, it seems clear that the inclusion of standard applicability language, typical of most criminal statutes, was a mistake. Nevertheless, I do not believe the language chosen by the legislature to limit the applicability of the act as a whole is susceptible of any other reasonable interpretation. In the absence of an actual constitutional violation, I do not consider it to be within the province of the courts to excise clear statutory language, even in the service of implementing an equal-ly clear, but inadequately expressed, legislative intent.

Because I believe the applicability of HB 02–1396 is controlled by the language of the act itself, I find it unnecessary to resort to the rule of lenity. I therefore concur only in the judgment of the court.

Justice EID, dissenting.

H.B. 02–1396 contains two provisions that are in square conflict regarding the date of applicability for the tolling provision. Section 2, which amends 18–3–411(2)(b), tolls the ten-year statute of limitations until the alleged victim turns eighteen, and states that the new tolling "shall apply to all felony offenses specified in subsection (1) of this section *which are alleged to have occurred on or after July 1, 1992.*" Ch. 288, sec. 2, § 18–3–411(2)(b), 2002 Colo. Sess. Laws 1127, 1128 (emphasis added). Section 5(1) states, on the other hand, that the act "*shall apply to offenses committed on or after [the date of passage, June 3, 2002].*" Ch. 288, sec. 5(1), 2002 Colo. Sess. Laws 1127, 1130 (emphasis added). The parties agree, as does the majority, that 18–3–411(2)(b) and section 5(1) cannot be reconciled, in that they both define the coverage of the tolling provision using different dates. Therefore, either the 1992 date or the 2002 date is a mistake. One must go.

When faced with such a conflict in the statutory language, "we seek the interpretation that will make the most consistent whole of the statute." *State v. A.N.J.*, 98 N.J. 421, 487 A.2d 324, 325 (1985); *cf. O'Donnell v. State Farm Mut. Auto. Ins. Co.*, 186 P.3d 46, 50 (Colo.2008) ("To effectuate the General Assembly's intent, we will read and consider the statute as a whole, giving consistent, harmonious, and sensible effect to all parts."); *People v. Texas*, 85 Colo. 289, 294, 275 P. 896, 898 (1929) (we must strive to "give effect to every word, clause, and section, if it can be done"). Unlike the majority, I would give effect to the 1992 date contained in 18–3–411(2)(b). While this interpretation does not give meaning to the 2002 date contained in section 5(1), it preserves the language of the tolling provision itself, as well as (1) the overall structure of H.B. 02–1396,

which is keyed off the 1992 date; (2) the legislation's appropriations and charging provisions, which only make sense if the 1992 date is used; and (3) the subsequent statutory amendments, which rest on the assumption that the tolling provision applies to crimes committed on or after 1992. By contrast, the majority's interpretation preserves section 5(1)'s 2002 date itself, but renders much of the rest of the statute senseless and superfluous—a result we should seek to avoid. *See Chickasaw Nation v. United States,* 534 U.S. 84, 84–85, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (adopting the only "reasonable reading of the statute" even though that interpretation rendered inconsistent phrase "surplusage"; describing inconsistent phrase as "simply a drafting mistake"; and declining to give meaning to inconsistent phrase because doing so would require "seriously rewriting the language of the rest of the statute").

Nor would I resort to the rule of lenity, upon which the majority depends, maj. op. at 258, because one statutory interpretation (the one giving effect to the 1992 date) is far more consistent with the statute as a whole than the other (the one giving effect to the 2002 date). In other words, there is no "tie" that the rule of lenity must break. *See United States v. Santos,* — U.S. —, —, 128 S.Ct. 2020, 2025, 170 L.Ed.2d 912 (2008) (Scalia, J., plurality opinion) (noting that the rule of lenity applies to break a tie). Because I would give effect to the 1992 language, and because the charges against the defendant are not time-barred under that date, I respectfully dissent from the majority's opinion.

Before the 2002 amendments, the relevant portions of section 16–5–401 and section 18–3–411 established a flat ten-year statute of limitations for felony sex offenses. The statute of limitations began running from the date the offense was committed. In 2002, the General Assembly revisited the statute of limitations provisions by adopting H.B. 02–1396. H.B. 02–1396 continued to provide a ten-year statute of limitations but tolled the limitations period until the alleged victim turned eighteen. As initially introduced and

then as ultimately adopted, section 2 amending 18–3–411(2)(b) stated:

> No person shall be prosecuted, tried, or punished for an unlawful sexual offense charged as a felony unless the indictment, information, complaint, or action for the same is found or instituted within ten years after the victim reaches the age of eighteen years. The ten-year statute of limitations shall apply to all felony offenses specified in subsection (1) of this section *which are alleged to have occurred on or after July 1, 1992."*

Ch. 288, sec. 2, § 18–3–411(2)(b), 2002 Colo. Sess. Laws 1127, 1128 (emphasis added). In other words, the new tolling provision would apply to all crimes for which the ten-year statute of limitations had not already run—that is, to crimes committed on or after July 1, 1992.

When H.B. 02–1396 was first introduced, then section 3, the clause outlining the bill's effective date and its date of applicability, was consistent with the tolling provision language in 18–3–411(2)(b). Specifically, it stated that "[t]his act shall take effect July 1, 2002 and shall apply to all offenses committed on or after July 1, 1992." H.B. 02–1396, 63rd Gen. Assem. 2d Reg. Sess. (Colo.2002). After the bill was introduced, and in order to facilitate compliance with appropriations requirements, the Office of the Colorado Legislative Council prepared a fiscal impact analysis. This analysis concluded that the bill would result in one additional incarceration by 2003. As a result of the fiscal impact, H.B. 02–1396 could only be passed contingent upon the availability of appropriations funds, which depended upon the passage of a separate bill. In other words, the funding bill had to pass in order for H.B. 02–1396 to become effective.

H.B. 02–1396 was thus amended in order to reflect that the bill was now contingent upon sufficient appropriations. Section 3 became section 5, and the bill's effective date and date of applicability were changed to the date of the bill's passage. Section 5(1), as adopted, provides, "Except as otherwise provided in subsection (2) of this section, *this act shall take effect upon passage,* and *shall apply to offenses committed on or after said*

*date."* Ch. 288, sec. 5(1), 2002 Colo. Sess. Laws 1127, 1130 (emphasis added). In sum, although 18–3–411(2)(b) applies the tolling provision to crimes committed on or after July 1, 1992, section 5(1) states that the act applies only to crimes committed on or after the date of passage, June 3, 2002.

The parties and the majority agree that the language in section 5(1) and in 18–3–411(2)(b) cannot be reconciled because they both define the coverage of the tolling provision using different dates. Either the 1992 date or the 2002 date is a mistake. We must give effect to one date; the other must go.

When faced with such a conflict in the statutory language, "we seek the interpretation that will make the most consistent whole of the statute." *A.N.J.,* 487 A.2d at 325; *cf. O'Donnell,* 186 P.3d at 50 (when interpreting a statute we seek to effectuate the General Assembly's intent by reading the statute as a whole); *People v. Texas,* 85 Colo. at 294, 275 P. at 898 (we must strive to "give effect to every word, clause, and section, if it can be done"). In my view, we should give effect to the 1992 date contained 18–3–411(2)(b)'s tolling provision. Admittedly, this interpretation does not give meaning to the 2002 date contained in section 5(1). However, this interpretation keeps the rest of the statutory scheme intact, in addition to preserving the tolling provision itself. More specifically, by giving effect to the 1992 date, this interpretation preserves (1) the overall structure of H.B. 02–1396, which is keyed off the 1992 date; (2) the legislation's appropriations and charging provisions, which only make sense if the 1992 date is used; and (3) the subsequent statutory amendments, which rest on the assumption that the tolling provision applies to crimes committed prior to 1992. By contrast, the majority's interpretation preserves section 5(1) itself, but gives no effect to the 1992 date contained in 18–3–411(2)(b). Moreover, its interpretation renders much of the remainder of the statute (and subsequent amendments) senseless and superfluous—a result we should seek to avoid. *See Chickasaw Nation,* 534 U.S. at 84–85, 122 S.Ct. 528 (adopting the only "reasonable reading of the statute" even though that interpretation rendered inconsistent phrase "surplusage"; de-

scribing inconsistent phrase as "simply a drafting mistake"; and declining to give meaning to inconsistent phrase because doing so would require "seriously rewriting the language of the rest of the statute").

First, the overall structure of H.B. 02–1396 depends on the 1992 date. In two different places, the legislation specifies that the new tolling provision applies only to crimes for which the ten-year statute of limitations had not run. As noted above, the tolling provision itself states that it applies to crimes that occurred on or after July 1, 1992. Ch. 288, sec. 2, § 18–3–411(2)(b), 2002 Colo. Sess. Laws 1127, 1128. In addition, the July 1, 1992 coverage date is repeated in the provision of the amendments subjecting various felonies committed *prior* to July 1, 1992 to a ten-year statute of limitations, without tolling. Ch. 288, sec. 2, § 18–3–411(2)(a), 2002 Colo. Sess. Laws 1127, 1128. ("The ten-year statute of limitations shall apply to all offenses specified in subsection (1) of this section which are alleged to have occurred on or after July 1, 1979, but prior to July 1, 1992."). Thus, under the statutory scheme, crimes committed prior to July 1, 1992 are subject to a flat ten-year statute of limitations, and those occurring after that date are subject to the ten-year statute of limitations, but with tolling, until the age of eighteen.

The General Assembly's selection of the July 1, 1992 date in two separate provisions of the statutory amendments was not a fluke. We have held that the legislature may extend the statute of limitations for crimes already committed without violating ex post facto principles as long as the statute of limitations has not run on those crimes. *See People v. Holland,* 708 P.2d 119, 120 (Colo.1985). Through amending 18–3–411(2)(a) and (b), the General Assembly subjected already committed crimes to the new tolling provision as permitted by the Constitution—that is, it applied the new tolling provision to crimes committed on or after July 1, 1992 for which the statute of limitations had not run. The July 1, 1992 date is thus not only specifically expressed in two provisions of H.B. 02–1396, it is critical to the structure of the entire legislative scheme.

Moreover, the lengthy appropriations provisions contained in the statutory amendments would be rendered meaningless unless H.B. 02–1396 applies to crimes already committed for which the statute of limitations had not yet run. Appropriations requirements mandate that any bill generating an increase in the number of persons incarcerated must provide for the immediate capital cost and operating cost for the first five years the bill has an impact. In order to comply with these requirements, the General Assembly used the Office of the Colorado Legislative Council's fiscal impact analysis to determine how much money was needed to pay for the first five years of H.B. 02–1396. More specifically, as adopted, the General Assembly specified the funding for H.B. 02–1396 in five separate provisions—for fiscal years 2002, 2003, 2004, 2005, and 2006. *See, e.g.,* ch. 288, sec. 3, § 17–1–139(1)(a), 2002 Colo. Sess. Laws 1127, 1128. ("For the fiscal year beginning July 1, 2002, in addition to any other appropriation, there is hereby appropriated from the capital construction fund ... the sum of ... ($69,467)."); *id.* at 1129 (specifically § 17–1–139(1)(b)–(e) ).

There would only be costs in the first five years, however, if the bill affects crimes committed on or after July 1, 1992. Specifically, in order for the bill to have a fiscal impact in 2002, it would have to permit prosecution of an offense that would, in the absence of the bill, be barred from prosecution in 2002. In other words, it would have to permit prosecution of additional crimes that would lead to an additional fiscal impact for the Department of Corrections.

If, as section 5(1) suggests, the legislation applied only to crimes committed after the date of passage, there would be no fiscal impact in the first five years and no reason to include the appropriations provisions in H.B. 02–1396. In other words, if the legislation only applies to crimes committed after the date of passage (June 3, 2002), the statute of limitations for those crimes could run—at the earliest—in 2012. It would have been irrational, then, for the General Assembly to have allocated money for the five years following the bill, if the bill would have no fiscal impact until 2012. Stated somewhat differ-

ently, under the majority's interpretation applying the 2002 date, the appropriations provisions—specifically, section 3 amending 17–1–139—are rendered senseless, as is the language in section 5(2)(a) of the effective date clause, which cross references those provisions.

If, on the other hand, the legislation applies to crimes committed on or after July 1, 1992 for which the statute of limitations had not run, as 18–3–411(2)(b) suggests, there would be a fiscal impact from the legislation in the first five years. By way of example, under the legislative scheme prior to H.B. 02–1396, a crime committed in July 1992 would have to be prosecuted within ten years, or by July 2002. Under 18–3–411(2)(b)'s tolling provision, however, that same crime—if it involved an alleged victim under the age of eighteen—could be prosecuted *after* July 2002 because the limitations period would be tolled until the alleged victim turned eighteen. As noted above, it was estimated that this tolling provision could lead to a fiscal impact by raising the Department of Corrections costs thus giving rise to the appropriations provisions. In sum, interpreting H.B. 02–1396 as applying to crimes committed on or after July 1, 1992 avoids rendering the appropriations provisions a nullity.

Similarly, the provisions of H.B. 02–1396 pertaining to the substantive crimes with which defendants could be charged make sense only if the legislation is interpreted to apply to already committed crimes. For example, language in H.B. 02–1396's amendment to section 16–5–401(8)(a.3) states, "[T]he period of time during which an adult person or juvenile may be prosecuted shall be ten years after such victim reaches the age of eighteen years as to any offense or delinquent act: (I) Charged as a felony under ... 18–3–403, *as it existed prior to July 1, 2000.*" Ch. 288, sec. 1, § 16–5–401(8)(a.3), 2002 Colo. Sess. Laws 1127, 1128 (emphasis added). In 2000, the crime of sexual assault in the second degree contained in section 18–3–403 was repealed. But because individuals must be charged under the statutory provision defining the crime as it existed the year the crime was allegedly committed, the new

16–5–401(8)(a.3) specified that the tolling provision would apply to crimes charged under the 2000 version of the sexual assault statute. It would make no sense for the General Assembly to have specified that the tolling provision applied to already committed crimes (i.e., those committed in 2000) if H.B. 02–1396 only applied to crimes committed after the date of passage (June 3, 2002), as section 5(1) suggests. Again, reading H.B. 02–1396 as applying to crimes committed on or after July 1, 1992 avoids rendering the charging provisions a nullity.

Finally, reading H.B. 02–1396 as applying to already committed crimes comports with 2006 legislation that repealed the statute of limitations entirely for certain crimes. *See* ch. 119, sec. 1, § 16–5–401, 2006 Colo. Sess. Laws 410, 410–13. Specifically, the General Assembly added language applying the new no-statute-of-limitations to certain offenses committed *"before* July 1, 1996, if the applicable statute of limitations, as it existed prior to July 1, 2006, has not yet run on July 1, 2006." Ch. 119, sec. 1, § 16–5–401(1.5)(b), 2006 Colo. Sess. Laws 410, 411 (emphasis added). Section 1 amending 16–5–401(1.5)'s language and applying the new no-statute-of-limitations language to crimes committed prior to July 1, 1996 would make sense only if there existed offenses that were not time-barred even though they were over ten years old, meaning they were committed before July 1, 1996. If the tolling provision is interpreted to apply only to crimes committed after the effective date of the legislation (June 3, 2002), there would be no crimes committed prior to 1996 for which the statute had not run. Again, the only way that 16–5–

401(1.5), as amended in 2006, is not rendered a nullity would be if the tolling provision of H.B. 02–1396 applies to crimes committed prior to 1996—in other words, by giving effect to the language in H.B. 02–1396 that applies the tolling provision to crimes committed on or after July 1, 1992.

What makes this such a difficult case is the fact that, either way we go, we must render some statutory language without effect. *See People v. Texas,* 85 Colo. at 294, 275 P. at 898 (we must strive to "give effect to every word, clause, and section, *if it can be done "* (emphasis added) ). Under the majority's interpretation, the 1992 date in 18–3–411(2)(b)'s tolling provision is without meaning; the interpretation I propose, however, fails to give effect to the 2002 date in section 5(1). But while the majority's interpretation preserves the 2002 date of section 5(1), it renders much of the statutory scheme superfluous and senseless. By contrast, the interpretation of H.B. 02–1396 that gives effect to 18–3–411(2)(b)'s 1992 date preserves not only that specific language, but the overall structure of H.B. 02–1396; the legislation's extensive appropriations and charging provisions; and the changes made to 16–5–401(1.5) in 2006. Thus, in my view, section 5(1)'s 2002 date is, "in context, [and using] common sense," "simply a drafting mistake," which, if followed, would require some "serious[s] rewriting [of] the language of the rest of the statute." *Chickasaw Nation,* 534 U.S. at 84–85, 122 S.Ct. 528.

Finally, unlike the majority, I would not resort to the rule of lenity in this case. Maj. op. at 258.[6] As the majority recognizes, the

**6.** The concurring opinion would not resort to the rule of lenity but instead would justify the selection of section 5(1)'s 2002 date on the ground that courts cannot "excise [that] clear statutory language." Conc. op. at 261. Yet the concurrence acknowledges that the language of the tolling provision is equally as clear. *Id.* Therefore, I see no basis for its ultimate conclusion that 18–3–411(2)(b)'s 1992 date was somehow "inadequately expressed" and therefore is the proper candidate for excision. *Id.* The concurrence also places weight on the fact that the 2002 date was added later in the legislative process. *Id.* at 259–60. However, it was added at the same time the General Assembly cross-referenced the appropriations provisions, which re-

flect the 1992 date. *See* ch. 119, sec. 5(2)(a), 2002 Colo. Sess. Laws 1127, 1130. In addition, the 1992 date in the tolling provision is more specific than section 5(1), as it applies to a specific amendment of the statute (the tolling provision) rather than the act as a whole. *See Jenkins v. Panama Canal Railway Co.,* 208 P.3d 238, 241–42, 2009 WL 1383620 (Colo. May 18, 2009) (noting that the canon of statutory construction stating that the later statute should be followed if there is a conflict between two statutes is properly invoked only if one statute is not more specific than the other). The concurrence also appears to conclude that the 2002 date must control because it is located in the effective date clause. Conc. op. at 259–60 ("[T]he subsequent decision to limit the applicability of the entire enactment

rule of lenity is properly invoked only when, after utilizing the ordinary tools of statutory construction, we are left with "no more than a guess as to what [the General Assembly] intended." *People v. Thoro Prods. Co., Inc.*, 70 P.3d 1188, 1198 (Colo.2003) (citation and internal quotation marks omitted); *see also id.* ("The rule of lenity is a rule of last resort, to be invoked only after traditional means of interpreting the statute have been exhausted." (citation and internal quotation marks omitted)). As the United States Supreme Court put it recently, the rule of lenity applies to break a "tie." *Santos*, 128 S.Ct. at 2025 (Scalia, J., plurality opinion). Here, in my view, there is no "tie," nor are there two "viable alternative[ ]" interpretations. Maj. op. at 258. Instead, the interpretive process leads to the result that one reading of the statute (the one that adopts the scope of coverage in 18–3–411(2)(b)'s tolling provision) is far more consistent with the statute as a whole than the other (the one giving effect to the 2002 date). I therefore would find that the interpretation that better preserves the statute as a whole controls— that is, that the tolling provision applies to all crimes that were committed on or after July 1, 1992 for which the statute of limitations had not already run. Given that there is no "tie" to be broken, resort to the rule of lenity is inappropriate in this case. *See* maj. op. at 258; *but cf. Santos*, 128 S.Ct. at 2025 (Scalia, J., plurality opinion) (holding that application of the rule of lenity was appropriate where "[u]nder either [proposed interpretation], all provisions of the [statute in question] are coherent; no provisions are redundant; and the statute is not rendered utterly absurd").

In conclusion, I would hold that H.B. 02–1396 tolled the statute of limitations in this case, and that therefore the prosecution may proceed. I thus respectfully dissent from the majority's opinion.

necessarily fixes an outer limit on the applicability of any of its parts."). But this reasoning presumes that the effective date provision must

control over the tolling provision, and I see no justification for doing so.